# HETZEL v. BALTIMORE & OHIO RAILROAD COMPANY.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 110. Argued November 9, 1897. — Decided January 8, 1898.

This was an action to recover damages for injury done to certain land in the city of Washington by reason of the illegal occupation by a railroad company of the street on which the land abutted. The land constituted original lot one in square 630, and long prior to the action it had been subdivided between the owners, and a plat thereof recorded. In the partition it was provided that the alleys marked on the plat were exclusively for the sole benefit and use of the sub-lots, should be private and under the control of all owners of property thereon, and that, except as provided, could not be closed unless by common consent. Before the action was brought the plaintiff had become the owner of the fee of all the sub-lots constituting original lot one. *Held,*

(1) If the plaintiff did not own all of original lot one, she was entitled to recover damages for any injury done to such part of it as she did own;

(2) The plaintiff, being the owner of all the sub-lots, was entitled, under the deed, to close the alleys altogether; and therefore it was error to instruct the jury that she could not have conveyed a good title to the land marked on the plat as alleys;

(3) The plaintiff was entitled to recover such damages as were equivalent to or would fairly compensate her for the injury done to her land by the defendant. Absolute certainty as to damages in such cases is impossible. All that the law requires is that such damages be allowed as, in the judgment of fair men, directly and naturally resulted from the injury for which suit is brought. What the plaintiff was entitled to was reasonable compensation for the wrongs done to her.

THE case is stated in the opinion.

*Mr. Frank W. Hackett* and *Mr. Walter D. Davidge* for plaintiff in error.

*Mr. George E. Hamilton* for defendant in error.   *Mr. M. J. Colbert* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by the plaintiff in error to recover damages alleged to have been sustained in consequence of the unlawful obstruction by the defendant in error of D street in the city of Washington.

The jury having been instructed that the plaintiff could not recover anything more than nominal damages, returned a verdict for one cent; and for that amount judgment was entered in her favor, but without costs.   And that judgment was affirmed in the Court of Appeals of the District.

The declaration alleged that the plaintiff was seized in fee of a certain lot of land on the corner of D and North Capitol streets in the city of Washington, "being lot numbered one, in square six hundred and thirty;" and that the defendant on the 24th day of April, 1873, and thereafter at divers other times, had wrongfully, unlawfully and injuriously obstructed that street, by placing thereon freight cars, in large numbers, and suffering the same to remain unreasonably long; by loading and unloading freight in the street; by using the street for the general purposes of a freight yard; by blocking the way with wagons and carts for the loading and unloading of freight — the result being that the plaintiff, as well as the public, was prevented from passing and repassing on D street, and more particularly from using that portion of it on which plaintiff's lot abuts to gain access to or exit from her land; and that the defendant still obstructs the street in the manner stated, whereby it has "materially and seriously diminished the value of said land and prevented the plaintiff from selling the same, though she tried so to do."

The plaintiff brought a suit in April, 1873, to recover damages for this obstruction, and obtained a judgment, which was paid. The present suit covers the period of three years from April, 1873. The declaration in the two suits was the same, except that in the present action the declaration contains the additional words " and prevented the plaintiff from selling the same, though she tried so to do."

In the present action the defendant pleaded : 1. Not guilty. 2. That the plaintiff's alleged cause of action did not accrue within three years before the institution of this suit. 3. That the plaintiff ought not to have or maintain her suit, because at a former term of the court she recovered judgment against the defendant in the sum of $843.86 in a suit at law for the same identical cause of action, which judgment was satisfied. Upon these pleas issue was joined in the usual form.

The bill of exceptions states that it was undisputed that the plaintiff owned unimproved land at the corner of D street northwest and North Capitol street in the city of Washington; that along the side of her premises, about where the sidewalk would be, the defendant maintained and used a railroad track for receiving and delivering freight; that the track stopped on D street, being a siding ; that the street was occupied by freight cars on the track, and carts were backed against the cars, so that access to the plaintiff's premises on the street was destroyed.

It was conceded that the track was maintained on the street without authority of law.

At the trial below the plaintiff testified that she owned the entire lot numbered one, in square 630; was joint owner with Judge Wylie in some 28,000 feet, but became sole owner in 1872; had not used the land since January, 1870, it being impossible to get upon it; had tried to sell it, but without success, persons wishing to buy saying that the position of the railroad rendered it useless to them; that there was no access to the land from D street except on foot; that the occupancy of the street by freight cars and the loading and unloading of freight was continuous during the entire period covered by

the present suit; that during this period she made every possible effort to sell the land, having instructed real estate agents to sell or get an offer for purchase.   She testified that the property was directed to be sold in any way that the agents could sell it, " to sell it or lease it or in any way to get people to build upon it;" and that she authorized its sale, as one lot, but "never confined them to selling the whole."   On cross-examination she said: "Of course, I gave them the whole lot to sell, but I did not forbid them to sell any part, and my instructions were to make some disposition of it, so that it could be utilized in some way; to lease it or sell it, in whole or in part, or in any way.   I always told them I wanted to sell or lease the whole or any part of it, in order to get buildings put up on the front of it."

The plaintiff introduced the testimony of certain real estate agents who had been authorized to sell the property, to the effect that the street was obstructed; that they took persons there to buy, who objected to purchasing because of the D street track; that they could readily have sold the lot for a certain price per foot, but for the obstruction of the track. She also produced the evidence " of experts as to the value of the land with the D street track there and with that track removed."

It further appeared that an offer made for a part of the lot on the corner of D street was declined by the plaintiff because she did not choose to sell off a part, and two persons who had been authorized as agents to sell the property testified that they were instructed to sell lot one as an entirety, and were not permitted to sell in parcels.

The defendant put in evidence the record of conveyances disclosing the title, and tending to prove that the plaintiff and Judge Wylie had owned as tenants in common since 1855 all of original lot one except 35 feet 10 inches by a depth of 120 feet, which the latter owned in severalty; and that in December, 1871, they subdivided their holding into lots numbered from 1 to 11, with alleys, according to a plat dated January, 1872, which was put in evidence.

The plat here referred to was as follows:

Opinion of the Court.

D Street, Northwest.

Upon this plat were recorded the following words: "This is to certify that we have subdivided that part of lot 1 in square No. 630, owned jointly by us, into the lots as laid down in the above plat as lots 1 to 11, both inclusive, with the alleys for their accommodation, which alleys are exclusively for the sole benefit and use of said lots."

At the time of this subdivision Judge Wylie and the plaintiff executed a deed of partition which gave sub-lots 1 to 5 inclusive in severalty to the plaintiff, and sub-lots from 6 to 11 inclusive to Judge Wylie in severalty, but did not convey the fee in the alleys. In January, 1872, Wylie conveyed to Tyler, and Tyler to the plaintiff, sub-lots 6 to 11 and that portion of original lot one (35 feet 10 inches front) just mentioned as not having been held by plaintiff and Wylie in common, but did not convey the alleys as such. Those deeds read: "Lots 6, 7, 8, 9, 10, 11, being subdivisions of lot one, in square

No. six hundred and thirty, on the ground plan of said city, according to the metes and bounds, covenants and conditions set forth and described in the deed of partition, dated December 28, 1871, entered into by and between Andrew Wylie and Mary C. his wife, and the said Margaret Hetzel, and recorded, with plat of subdivision annexed thereto; . . . also all that part of said lot one in said square No. six hundred and thirty, at the northeast corner thereof, fronting on North Capitol street thirty-five feet and ten inches by a depth of one hundred twenty feet, together with all the improvements, ways, easements, rights, privileges and appurtenances to the same belonging or in anywise appertaining, and all the remainders, reversions, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the said party of the first part of, in, to or out of the said piece or parcel of land and premises."

The partition deed above referred to contained the following among other clauses: "And the said parties Andrew Wylie and Margaret Hetzel do and each of them doth hereby mutually covenant and agree to and with each other as follows: That the said Margaret Hetzel, her heirs and assigns, shall have the right to erect any structure or building from lot number one on D street north over or across the alley entering from that street on condition that an open space of ten feet in width and twelve feet in height shall at all times be kept clear for ingress and egress for the use of the other lots in the rear bounding on the alleys and area as designated in said plan. Also that the said Andrew Wylie, his heirs and assigns, being owner or owners of lots eight, nine and eleven in said plan, and of the above-mentioned part of said lot one in said square not embraced in this partition, but owned at present by the said Wylie as his own individual property, fronting 35$\frac{10}{12}$ feet on North Capitol street by 120 in depth, may at any time in their discretion close the ten-foot alley running northward from the main area in the rear of lots eight and nine. Also that the owner or owners of lots four and five shall have the like privilege to close the five-foot

alley along the rear of lot five and part of lot six so far as the main area aforesaid. Also that all these alleys and area shall be private and to be under the control of all owners of property touching thereon, and except as hereinbefore otherwise provided shall never be closed unless by common consent, and the owners thereof and of each of said lots shall at all times contribute their and each of their joint and equitable proportions of all proper and necessary charges for paving the said alleys and area and keeping the same in proper condition by means of drains, sewers or otherwise, and the same are to be for the exclusive use of said owners. And the parties hereto have annexed to this deed and made it part of the same for illustration and reference, a copy of the aforesaid plan of their subdivision. In testimony whereof," etc.

The railroad company also introduced testimony tending to prove that since 1872 the property had been assessed for taxes and that taxes were paid upon it as subdivided into lots from 1 to 11.

This is substantially all the evidence set forth in the bill of exceptions.

The plaintiff presented several requests for instruction, among which were the following:

"The jury are instructed that if they shall find that the property in question was rendered unsalable by reason of the alleged nuisance, and, further, that the plaintiff in good faith was trying to sell it, an allowable method for them to estimate the measure of damages is to ascertain what the plaintiff might have obtained for the property with the obstruction there and what she might have obtained for it with the obstruction removed, and allow her the legal rate of interest — that is, six per cent — on the difference for so long a period, not exceeding three years, as the jury shall be satisfied that she was so continuing her efforts to sell it.

"If you shall find for the plaintiff, then having ascertained a sum you think would on the 24th day of April, 1876, have compensated the plaintiff, you are allowed in your discretion to add interest, not exceeding six per centum, upon that sum from that date, provided you shall think that such sum with-

out interest is not a fair compensation for all the loss you find that the plaintiff has sustained.

" If the jury shall find that the defendant so' obstructed the access to and egress from the plaintiff's land that she could not use the same as such property is generally used, then the jury are at liberty to allow such damages as they shall find have resulted from the act of the defendant, irrespective of any attempt made by the plaintiff to sell the same."

Each of these instructions was refused, and to that action of the court the plaintiff at the time duly excepted.

Thereupon, the bill of exceptions states," the court instructed the jury that the plaintiff offered her property for sale as a whole, and undertook to sell it as lot one; that the action was for damages for her not being able to sell lot one ; that the testimony showed that even if she had received an offer for lot one she could not consummate the sale, because she did not own the fee in the alleys.  This being so, and the defendant's counsel conceding that the structure was illegal, the court instructed the jury that the plaintiff could not recover anything more than nominal damages, and thereupon instructed the jury to find for the plaintiff for one cent damages, which was done."

1. In the opinion of the Court of Appeals it is said that there was not a particle of evidence in the record as to the salable or rental value of the land without reference to the existence of the nuisance complained of, and that such facts were essential to be ascertained in order to furnish a basis for estimating the damages.  It is clear however that there was evidence before the jury " as to the value of the land with the D street track thereon and with that track removed."  It is so expressly stated in the bill of exceptions.  The amounts given by the witnesses when testifying as to value were not. set out in the bill of exceptions for the reason, we infer, that the real contest was as to questions of law arising upon the instructions asked by the plaintiff and the ruling of the court that the plaintiff could recover only nominal damages.  The bill of exceptions was evidently prepared with reference to those questions.  It must, therefore, be assumed, upon the

record, that there was evidence as to value upon which the·
plaintiff was entitled to go to the jury, unless she was pre-
cluded by some principle of law from recovering anything
more than nominal damages.

2. The Court of Appeals, after observing that the instruc-
tions asked by the plaintiff were founded upon the assumption
of injury to her in respect of all the lots contained in the subdi-
vision of original lot one, and did not propound any proper or
exact rule for estimating damages, said : " But, apart from all
this, the evidence upon which the prayers were founded
showed a state of case quite different from that set out in
the declaration. It is not upon the evidence alone, but upon
the pleadings and the evidence applicable to the pleadings,
that the plaintiff can in any case recover, and the one must
consist with the other. The declaration here, as we have
seen, proceeds as for an injury to the entire original lot, with-
out any reference or respect to the subdivision of that lot, and
that the lots made of the subdivision are separate and dis-
tinct parcels of ground, fully recognized and provided for by
law; and entirely ignores the fact that the plaintiff never was
in reality seized in severalty of the original lot one, as it existed
before the subdivision, and as declared upon in the declara-
tion. The proof produced by the defendant, showing how
lot one was originally held, and how it had been subdivided
and partitioned, and how title to all the lots was acquired
by the plaintiff, and their relation to each other and the
streets upon which they abut, entirely negatives and refutes
the case presented in the declaration, and the right of the
plaintiff to recover thereon."

Undoubtedly, the declaration claims damages for the injury
done to the entire original lot numbered one in square six
hundred and thirty. It appears that when this action was
brought the plaintiff owned all the sub-lots which, with the
alleys as marked on the plat of 1872, constituted original lot
one. If the railroad company, by its illegal use of D street,
had done injury to the land, or any part thereof, within the
exterior boundaries of original lot one, we are unable to per-
ceive why damages might not be recovered in this action

with respect to such part as, in fact, the plaintiff owned, although she may have claimed to own more than belonged to her. In estimating the damages, the jury could take into consideration the subdivision of original lot one, and eliminate from their calculation any sub-lot belonging to the plaintiff that was not damaged in salable or rental value by the nuisance in question. So, if the plaintiff did not own the alleys marked on the plat, that fact could be given proper weight in estimating the damages she was entitled to recover; that is, if damages were claimed in respect of more land than belonged to the plaintiff, the recovery could have been limited to the injury done to the part that she did own.

3. The jury were instructed that the testimony showed that the plaintiff offered her property for sale as a whole, and undertook to sell it as a whole. This was error, for the instruction implied that the plaintiff had not put her property on the market except as a whole; whereas the bill of exceptions shows that while there was evidence tending to prove that she wished or preferred to sell it as a whole, there was also evidence that the plaintiff authorized her land to be sold in parcels or as a whole, indeed, "in any way."

4. The jury were also erroneously instructed that the action was for damages by reason of the plaintiff not being able to sell lot one, and that, according to the testimony, "if she received an offer for lot one she could not consummate the sale because she did not own the fee in the alleys." In the first place, the action was for damages for the injury done to the value of the plaintiff's land, and the unnecessary recital in the declaration that she had tried to sell did not convert the action into one only for damages for not being able to consummate a particular sale. If the salable or rental value of the land was substantially or materially diminished by the defendant's illegal use of D street, she would be entitled to recover without proving that, on a specific occasion, she tried to sell, but failed to effect a sale. In the second place, the plaintiff's right to damages for material injury done to the land owned by her would not have been defeated even if it were true that she did not own the fee in the alleys. If the

alleys had been dedicated to public use, so as to be beyond the control of those owning the abutting lots, plaintiff would nevertheless have been entitled to recover in this action for any substantial diminution in the value of her land, or of any part thereof, arising from the nuisance in question. Apart from this, we do not perceive why she might not have passed, by deed, the fee of the ground marked on the plat as alleys. By the Revised Statutes of the District of Columbia it is provided that "the ways, alleys, or passages, laid out or expressed on any plat or subdivision, shall be and remain to the public, *or* subject to the uses declared by the person making such subdivision, at all times under the same police regulations as the alleys laid off by the Commissioners on division with the original proprietors." Rev. Stat. D. C. § 480. What were the uses, in respect of these alleys, as declared by the persons who made the subdivision of lot one? Upon the plat of the subdivision it is declared that the alleys "are exclusively for the sole benefit and use of said lots." And the deed of partition between Wylie and Hetzel expressly provides that "all these alleys and area shall be private and to be under the control of all owners of property thereon;" that except as provided they "shall never be closed unless by common consent," and that "the same are to be for the exclusive use of said owners." Now, when the plaintiff became the owner of all the sub-lots of original lot one, is it to be doubted that she could have closed the alleys altogether and have conveyed a good title to all the land constituting the original lot one? If this be so, it was error to instruct the jury that she could not have made a good title in fee to the entire original lot as one body of land, including the alleys on which the respective sub-lots abutted.

5. It results from what has been said that the trial court erred in instructing the jury that the plaintiff could recover nothing more than nominal damages. In our opinion, she was entitled to recover such damages as were equivalent to the injury done to her by the defendant's inexcusable and persistent occupation and use of a public street in violation of law and in disregard of her rights as an owner of adjacent

property.   At the trial of the first case brought by the plaintiff against the railroad company on account of this nuisance, Judge Hagner instructed the jury that they might ascertain from the evidence what, in the absence of the D street track, would be the fair value of the property in its unimproved condition during the time covered by the declaration; and if they found that the property during that period remained in that condition by reason of the track maintained and used by the defendant, then they might allow such sum as was equal to six per cent interest on such value, if they believed that the loss of revenue was caused wholly by the track, or a lesser sum proportionate to the effect which the maintenance and the use of the track had in causing the lot to lie unproductive.   This was substantially the proposition of law embodied in one of the instructions asked by the plaintiff.

What was the plaintiff's land reasonably worth, during the period covered by the declaration, if D street had not been occupied and used by the railroad company in the manner disclosed by the evidence?   In the absence of the defendant's track was there a reasonable certainty that it could have been used or sold?   If so, for what purpose could it have been profitably used, or for what sum could it have been sold?   Was it reasonably certain that neither the original lot nor any sub-lot could have been used or sold while the street was obstructed by the defendant's track?   These were all proper inquiries by the jury in determining what damages were equivalent to, or would fairly compensate the plaintiff for, the injury done.

Of course, in such inquiries, absolute certainty as to the damages sustained is in many cases impossible.   All that the law requires is that such damages be allowed as, in the judgment of fair men, directly and naturally resulted from the injury for which suit is brought.   This is the rule which obtains in civil actions for damages.   They have their foundation in the idea of just compensation for wrongs done. In *United States Trust Company* v. *O'Brien,* 143 N. Y. 284, 287–289 — which was an action for damages for the breach of certain covenants contained in a lease — Mr. Justice Peck-

ham, speaking for the Court of Appeals of New York, when a member of that court, said: "It is clear, and so it has been held in many cases, that the rule of damages should not depend upon the form of the action. In all civil actions the law gives or endeavors to give a just indemnity for the wrong which has been done to the plaintiff, and whether the act was. of the kind designated as a tort or one consisting of a breach of a contract, is on the question of damages an irrelevant inquiry. As was said by Rapallo, J., in *Baker* v. *Drake*, 53. N. Y. 211, 220, the inquiry is what is an adequate indemnity to the party injured, and the answer cannot be affected by the form of the action in which he seeks his remedy." Again : "In using the words 'uncertain, speculative and contingent,' for the purpose of excluding that kind of damage, it is not meant to assert that the loss sustained must be proved with the certainty of a mathematical demonstration to have been the necessary result of the breach of covenant by the defendant. The plaintiff is not bound to show to a certainty that excludes the possibility of a doubt that the loss to him resulted from the action of the defendant in violating his agreement. In many cases such proof cannot be given, and yet there might be a reasonable certainty founded upon inferences legitimately and properly deducible from the evidence that the plaintiff's loss was not only in fact occasioned by the defendant's violation of his covenant, but that such loss was the natural and proximate result of such violation. Certainty to reasonable intent is necessary, and the meaning of that language is that the loss or damage must be so far removed from speculation or doubt as to create in the minds of intelligent and reasonable men the belief that it was most likely to follow from the breach of the contract. and was a probable and direct result thereof. Such a result would be regarded as having been within the contemplation of the parties and as being the natural accompaniment and the proximate result of the violation of the contract. . . . The proof may sometimes be rather difficult upon the question whether the damage was the just or proximate result of the breach of the covenant. In such case it does not

come with very good grace from the defendant to insist upon the most specific and certain proof as to the cause and the amount of the damage when he has himself been guilty of a most inexcusable violation of the covenants which were inserted for the very purpose of preventing the result which has come about."

We are of opinion that the Court of Appeals erred in affirming the judgment of the. Supreme Court of the District.

*The judgment is reversed, and the cause is remanded, with directions for a new trial in the Supreme Court of the District and for further proceedings consistent with this opinion.*