## PORTO RICAN AMERICAN TOBACCO CO. OF PORTO RICO v. AMERICAN TOBACCO CO.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 114.

Jonathan H. Holmes, of New York City (Martin Conboy, of New York City, of counsel), for appellant.

Burroughs & Brown, of New York City (H. Lewis Brown and Charles S. Day, Jr., both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The decree entered below enjoins the appellant from continuing to practice a discrimination in prices in the sale of appellant's brand of "Lucky Strike" cigarettes for resale, use, and consumption within the island of Porto Rico. It rests upon the violation by appellant of section 13 of title 15, U. S. Code (section 2 of the Clayton Act [15 USCA § 13]), which provides:

*"Discrimination in Price Between Purchasers.* It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: Provided, that nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition; and provided further, that nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade."

The appellee is a Porto Rico corporation manufacturing and selling cigarettes and cigars in Porto Rico. Its brands of cigarettes are known as "Casino," selling there at retail for 12 cents per package of 20, and "Collectiva," at 6 cents per package of 10. It sold wholesalers and jobbers, who in turn sold retailers, for ultimate sale to the consumer, and for a number of years up to July 18, 1927, sold at a net price of $4.75 per thousand, which represented a satisfactory profit. The appellant sold in the same market its brand of "Lucky Strikes," manufactured in the United States.

The Porto Rico Legislature, in May, 1927, enacted an amendment to the tax laws of the island, whereby the tax on cigarettes selling at regular wholesale prices of $2 and $3, per thousand, exclusive of such tax, was increased from $3 to $4 per thousand. There were higher brackets for cigarettes selling at a higher wholesale price. The effect of the law was to impose an additional tax of $1 per thousand over what had previously been imposed upon cigarettes selling from $2 to $3 per thousand. Appellee's cigarettes, selling at $4.75 per thousand, including a $3 tax, were not affected by the change of the law. Appellant's cigarettes

had been selling for $2.25, and, if the price had remained, it would be increased from $3 to $4 per thousand. Appellant sold its "Lucky Strikes" cigarettes in the United States and Porto Rico at a price which required payment of $3 per thousand under the laws of the United States, as well as those of Porto Rico. After the effective date of the amendment, and for a period of two weeks, the appellant sold its cigarettes on the basis of the retail price of 18 cents per package of 20, being an advance of 3 cents over the old price of 15 cents per package, which concededly represented substantially nothing more than the increase made necessary by the additional tax paid under this amendment. It then changed its price on cigarettes sold in Porto Rico, so as to sell at retail for 12 cents per package of 20.

 If the appellant discriminated in price between different purchasers—those of the United States and of Porto Rico—and the purpose of such discrimination was not in good faith to meet competition, but to effect, by such discrimination, a substantial lessening of competition, or to create a monopoly, the statute is violated, and the appellee, if injured thereby, is entitled to injunctive relief. Section 26 of title 15, USCA. Ruinous competition by lowering prices has been recognized as an illegal medium of eliminating weaker competitors. Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; United States v. American Tobacco Co., 221 U. S. 106, 31 S. Ct. 632, 55 L. Ed. 663.

 Commencing June 30, 1927, when the new tax law was effective, appellant sold its cigarettes to its sole customer in Porto Rico— Gilles & Woodward—for $4.65 per thousand c. i. f. San Juan, including the $3 tax to the government of Porto Rico. This amounts to approximately 10 cents per package, thus making the actual price $4.55, including the $3 tax to the government, or $1.55 ex tax. The price to customers in the United States is $5.64 per thousand. This price included $3 for the United States tax, based on the weight of the cigarettes. Thus the Porto Rico customer received his cigarettes at $1.10 per thousand less than was paid by the customer in the United States. But it is argued that the cost of selling in Porto Rico is from 40 to 70 per cent. less, which would average about 55 cents a thousand, than the cost of selling in the United States. However, making this deduction, there was a deficiency of 55 cents in favor of the Porto Rican customer. The same grade of cigarette was sold in each place, and no claim of discrimination is made because of a difference in quality. Indeed, it was established that the appellant had customers in the United States who bought in as large a quantity as its selling agent in Porto Rico and for a higher price.

At the time the amendment went into effect, the appellant's "Lucky Strikes," with the $3 tax, was selling to the jobber at $5.95, and to the retailer at $6.25. In considering any possible adjustment of prices, in view of the increased tax, it was this price which naturally would be taken into consideration, and not the price of $2.15 ex tax, which it received from its customer, and which it now sets forth as if it were the figure to be considered. The price of $2.95 ex tax to the jobber, that had to be taken into consideration, was the price which, under the amendment, meant a tax of $4, and prior thereto a tax of $3. Before the amendment to the Porto Rico tax law, the appellant was selling in Porto Rico at $2.15 ex tax f. o. b. New York, and after adding the difference of selling expenses in favor of Porto Rico made the price $2.70 ex tax to the Porto Rican customer, as compared with $2.65 to the American customer. After June, 1927, in addition to making this discriminating cut, it gave to its sales customer a guaranty of a profit of $20,000 per year on their entire business. It was also established that at such price the appellant lost on its business, in addition to $20,000 per annum, $10,147 per month. This establishes an unjust discrimination made between customers.

There were four manufacturers at the time of the amendment to the tax law competing for business in Porto Rico—three United States firms and the appellee. The brands were appellant's "Lucky Strikes," selling at 15 cents per package; Reynolds Tobacco Company's "Camels," at 15 cents per package; and three brands of Liggett & Myers Tobacco Company—"Chesterfield" at 15 cents, "Spur" at 14 cents, and "Coupon" at 12 cents. Appellee had the largest volume of sales in 1925, and it continued to have until June, 1927. The appellee's capital was about $6,000,000. The appellant had an annual income of four times this capital, or $22,000,000, and a par value capitalization of $186,000,000. The other United States competitors were also very strong financially. Under appellant's competitive methods, appellee was obliged to reduce its price from 12 cents to 10 cents per package, and to the jobber at 95 cents, which was a bare factory cost, making a loss of from $150,000 to $180,000 per year. Prior to this price warfare,

its profits were from $200,000 to $250,000 per year. If this competition, resulting in such loss, continued, it is fair to assume that the appellee could not continue in business, and its elimination as a competitor was certain. Thus the appellant's discrimination will substantially lessen competition.

Nor was this discrimination in price in favor of the Porto Rican market made for good reason or in good faith. Whatever may be the merits of the respective claims as to the part played by the appellee's officers in opposing or presenting opposition to the legislation in May, 1927, does not aid the inquiry as to the appellant's good faith in its price-cutting campaign. It was inexcusable for the appellant to begin such a campaign upon the failure to enlist the co-operation of the appellee's officer in opposing the bill or obtaining a veto from the Governor. Whether the complaint that the appellee and its officers did not co-operate to prevent the legislation was real or fancied is beside the mark. It was at this time that the appellant's sole customer was called to New York and the guaranty against loss to the extent of $20,000 per year was made, and it was then that the customer agreed to sell to the retail trade, paying the tax, at a lower price, so that "Lucky Strikes" went on the market in competition with appellee's poorer grade of cigarettes, at 12 cents for a package of 20 "Lucky Strikes." The campaign was accompanied by advertising on a large scale in the local newspapers and billboards for a long period.

Appellant sent its export manager of its entire business to Porto Rico to wage the price war, and his admissions and business methods, there displayed, all prove the fact that it was intended to punish, and, if possible, eliminate, the appellee as a competitor. He directly proceeded to use strong, unfair competitive methods, and, from his own statements, designedly tried to cause loss to the appellee, a weaker competitor. "Lucky Strikes" was a much more expensive cigarette than appellee's brand, and, if sold at as low or a lower price, it would be practically impossible for a weaker competitor to continue. Its cost was more than double that of the appellee's, considering the elements of manufacturing cost and the quality of tobacco used. This conduct, together with the guaranty against loss, made to its sales customer there, is sufficient evidence of a design and plan to put the appellee out of business, either because of some real or fancied wrong due to the unfavorable legislation, or it was used as an excuse to proceed against and eliminate a weaker competitor. In either case it was violative of the statute.

The letters written by this agent of the appellant to its officers, explaining the designs and purposes, justify the appellee in its claims. The appellant could stand this competition in this price warfare. Its sole business in Porto Rico was the sale of "Lucky Strikes," and this was about one-half of 1 per cent. of its entire "Lucky Strikes" business throughout the world. A loss there would not impair its financial stability, but the appellee could not so compete. Such price-cutting to capture the market, by eliminating the appellee therefrom, is prohibited by the provisions of the Clayton Act. It was foreign to any legitimate commercial competition. The Gilles & Woodward books showed a monthly loss after June 27th on the sales volume of 3,000,000 per week, $18,200 for August and September alone, and the loss continued. This, added to appellant's loss, shows the willingness to accept an annual loss of $175,000.

■ But appellant argues that injunctive relief should be denied upon the theory that the appellee's officers did not keep faith in opposing the tax law of June, 1927. The claim is that the appellee came into a court of equity with unclean hands. This principle has no application here. The part played by the appellee's officers, if any, in fostering or preventing this legislation, is unimportant. It became a tax law of Porto Rico, however unjust it may have appeared to the parties concerned; it could not be used as an excuse for unfair competition. Moreover, there is no evidence of anything said or done by the appellee's officers in aiding or preventing the passage or the approval of the law.

■ Complaint is made of interrogatories directed under equity rule 58, addressed to the appellant and ordered answered. They were competent, for they elicited information exclusively within appellant's knowledge. They did not violate the Fifth Amendment to the Constitution, as argued, because a suit for damages to appellee's property may be maintained under the provisions of the Clayton Act. Section 15, title 15, U. S. C. (15 USCA § 15). See Hale v. Hinkle, 201 U. S. 75, 26 S. Ct. 370, 50 L. Ed. 652; Standard Oil Co. v. Universal Oil Products Co. (D. C.) 21 F.(2d) 159. The appellant, by its verified answer, raised the issue to which the interrogatories were addressed, and they were properly ordered to be answered. Grasselli Chemical Co. v. Natl. Aniline & Chemical Co. (D. C.) 282 F. 379.

The decree, as written, fully and concise-

ly advises the appellant what it must desist from doing. Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518. There need be no apprehension of the extent of its mandate, if the acts and conduct complained of and supported by the testimony be discontinued.

Decree affirmed, with costs.