## AMERICAN CAN CO. v. LADOGA CANNING CO. *

## LADOGA CANNING CO. v. AMERICAN CAN CO.

### Nos. 4318, 4336.

Circuit Court of Appeals, Seventh Circuit.

Oct. 28, 1930.

*Certiorari denied by Supreme Court 282 U. S. —, 51 S. Ct. 183, 75 L. Ed. —.

Solon J. Carter, of Indianapolis, Ind., and James A. Ross, Austin V. Clifford, Harry T. Ice, Harold K. Bachelder, and William C. Bachelder, all of Indianapolis, Ind. (Matson, Carter, Ross & McCord and Bachelder & Bachelder, all of Indianapolis, Ind., of counsel), for Ladoga Canning Co.

L. A. Welles, John A. Garver, and Garrard Winston, all of New York City, and William H. Thompson, Albert L. Rabb, and

Thomas D. Stevenson, all of Indianapolis, Ind., for American Can Co.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge.

Ladoga Canning Company, hereinafter called plaintiff, brought this action to recover damages of American Can Company, hereinafter called defendant, for the alleged violation of section 2 of the Clayton Act (15 USCA § 13). The cause was submitted to a jury which found for plaintiff and assessed its damages at $30,000. Judgment was thereafter entered for $105,000, being three times the amount of the actual damage suffered by plaintiff plus $15,000 which the court found as plaintiff's reasonable attorneys' fees. Authority for the allowance of attorneys' fees and treble damages appears in section 4 of the Clayton Act (15 USCA § 15).

Both sides appealed from the judgment thus entered. Defendant assigns numerous errors, while plaintiff, on its appeal, assigns but one, to wit, the inadequacy of the sum allowed as attorneys' fees.

Defendant's appeal No. 4318. Defendant argued, principally, the assignments of error, arising out of the court's failure to direct a verdict in its favor at the close of all the testimony. To better understand the contentions, a short statement of the facts is necessary. One phase of a companion case, similar as to issues, was before this court on a previous appeal. We certified certain questions to the Supreme Court where a ruling favorable to plaintiff's contention was announced. Van Camp & Sons Co. v. American Can Company, 278 U. S. 245, 49 S. Ct. 112, 73 L. Ed. 311, 60 A. L. R. 1060. (The Van Camp Company in that appeal is not the Van Camp Packing Company hereinafter frequently mentioned.) A reference to that opinion is made for brevity's sake, as it discloses the general nature of the controversy and the character of the discrimination with which the defendant is here charged.

Plaintiff's action is predicated on two sections (2 and 4) of the Clayton Act (15 USCA §§ 13, 15), which read:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any Territory there-of or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: Provided, That nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition: And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade."

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Plaintiff, an Indiana corporation, is engaged in canning food stuffs and selling its products. Defendant, a New Jersey corporation, is a manufacturer engaged among other things in making and selling tin cans used as containers by packers of canned goods. It operates several factories, one being located at Indianapolis. The Van Camp Packing Company is a packer of canned goods, a concern much larger than plaintiff. It packs and sells goods some of which were sold in competition with plaintiff, and some of which (different products) were not in competition with plaintiff.

In the canning business the territory between the Rockies and the Alleghenies was known as the central district. It was served by between 1,000 and 1,500 canneries, about one-half of which purchased their tin can containers from defendant. About 30 per cent. of defendant's $110,000,000 annual business came from this territory. Van Camp's requirement was between 3 per cent. and 4 per cent. of defendant's business in sanitary cans,—the total number of sanitary cans manufactured annually being over two and a quarter billion. Plaintiff purchased sanitary cans of defendant in the amount of

$687,951 during the period in question. Van Camp's purchases, during the same period, amounted to $11,206,702. In addition, Van Camp purchased of defendant over $7,000,-000 of other kinds of cans, principally milk cans.

Plaintiff charged defendant with price discrimination in selling its cans to Van Camp; that such price discrimination gave Van Camp a great advantage over its competitors, including plaintiff; that the effect of such price discrimination was substantially to lessen competition in the line of business in which Van Camp was engaged and tended to create a monopoly in Van Camp in certain lines of commerce. Plaintiff also asserted that it suffered damages because of such price discrimination in favor of its competitor.

Defendant denied that it discriminated in favor of Van Camp but admitted it sold cans to Van Camp at a price less than it sold them to plaintiff. It justified the difference in price on three grounds: (a) Because of the volume of Van Camp's business; (b) because it feared Van Camp, unless given the price demanded, would go into the business of manufacturing tin cans; (c) because one of defendant's competitors was endeavoring to secure Van Camp's business and the reduction in price was therefore made "in good faith to meet competition."

Defendant also defended on the ground that plaintiff suffered no damage. It also denied that such price discriminations, if they were discriminations, substantially lessened competition or tended to create a monopoly in any line of commerce. It also defended on the ground that most of Van Camp's business was intrastate business and the interstate business was so small as to have little or no bearing upon the line of commerce in which their purchasers were engaged, and that such interstate business was not in a line in which plaintiff was engaged.

At the close of all the testimony, defendant moved for a directed verdict in its favor. The motion was overruled, and the cause was submitted to a jury under instructions apparently satisfactory to both sides. In addition to assigning error for failure to take the case from the jury, defendant also complained because of the admission of certain evidence over its objection. These contentions will be considered separately.

*Discrimination.* The evidence showed beyond dispute that defendant sold Van Camp tin cans at much less than was charged plaintiff or any other packer. The extent of the difference is a matter of some dispute. Plaintiff included certain allowances and rebates which defendant refused to admit as items properly included within the term "prices." To illustrate, appellant allowed Van Camp $65,000 for advertising purposes. It allowed a credit of $100,000 on cans purchased immediately preceding the execution of the contract complained of. It gave Van Camp an allowance of $1.25 per thousand packer's cans, payable monthly. Other allowances were made on different sized cans. Defendant rented to packers, machines for closing the cans when filled. It charged its lessees an annual substantial rental therefor, but permitted Van Camp to use its machines without rental. Defendant paid these rebates or allowances, although Van Camp was at the time indebted to it. If all of the allowances for which plaintiff argued were included in the price deductions, they aggregated about 18 per cent. of the selling price. If certain items objected to by defendant were excluded, they amounted to approximately 11 per cent.

The jury was justified in finding, or at least there was evidence sufficient to support such findings, that the discount amounted to 18 per cent. of the price paid by Van Camp; that Van Camp purchased during the period covered by the suit some $18,000,000 worth of cans; that the cost of the tin can is an important item in packing costs, amounting to nearly one-third of the entire cost and in some instances equals or exceeds the cost of the food material placed in the can; that 2½ cents per case was the usual profit to the packer on winter packed goods, and the price discount granted Van Camp was a material factor in the sale of the finished product.

The jury was also justified in finding that Van Camp's growth after the execution of its 1921 contract was unusual and far exceeded the growth of the canned goods business generally throughout the country. We think, too, the evidence would sustain a finding that such increased growth was in considerable part due to the favors Van Camp thus received from defendant in the purchase of its cans.

As to defendant's attempted justification of the difference in price charged plaintiff and that charged Van Camp, the jury might well have found that, while Van Camp purchased many more cans than did plaintiff, defendant advertised widely the fact that all its cans of like character and size were sold

at the same price to all customers, and that all prices were f. o. b. Indianapolis.

Defendant made two contracts with Van Camp on the same day, one a secret agreement which contained provisions for rebates and allowances not found in the simultaneously executed agreement on the same subject. Defendant told plaintiff and all other purchasers, save Van Camp, that its prices were the same to all, and it did not permit its own sales force to know of the secret agreement with Van Camp. From these findings the jury could have readily found that defendant did not in good faith cut its price to Van Camp because of the latter's volume of business.

Defendant's argument that it feared a rival might take away the Van Camp business and, therefore, the discrimination was justifiable because made in good faith to meet competition, is not supported by persuasive testimony. Likewise, its asserted fear that Van Camp might go into the tin can producing business could well have been rejected by the jury as its reason for the favoritism shown Van Camp. While a jury might perhaps have found for defendant on both of these issues, the evidence was such as to call for their submission to a jury.

We fully agree with defendant's counsel when they say that the executive officers of the manufacturing company and not a jury must decide whether the producer shall or shall not make price concessions to large consumers whose large demands make output more constant and thus lessen costs.

But the right of defendant's officers to determine the necessity of granting price reductions to a large customer is one thing. The right (and the duty under the statute) to inquire whether a price reduction was in fact made because of volume of business or to meet competition presents an entirely different issue. To determine this last issue, the jury was required to weigh the evidence offered by defendant, which sustained its protestations that the prices were reduced to Van Camp because of the size of its business or to meet competition, against the evidence tending to show no necessity for such reductions. An issue was presented where defendant's protestations of good faith must be weighed against the facts which tended to controvert such protestations.

Van Camp's business was large. Yet it was only about 3 per cent. of defendant's total business. In the central section defendant served between 1,000 and 1,500 canners. The requirements of no two of them were

the same. They all bought f. o. b. Indianapolis and they were all assured by defendant that no competitor was getting a different or a better price than they were.

Perhaps the most persuasive bit of evidence in the record disputing defendant's asserted justification for the discrimination allowed Van Camp came from its own acts. It loudly advertised and stoutly maintained that prices were the same to all. If so, wherein lies its justification for the secrecy surrounding its price rebate contract with Van Camp? We have found none. It is unusual, to say the least, for a company of defendant's size to deal with a customer like Van Camp, engaged in a competitive business, to make two contracts on the same day, one binding and the other not, the contract not binding being similar to the one entered into with all of Van Camp's competitors. Why should defendant conduct its business with Van Camp other than in the usual ordinary way? It billed its goods to Van Camp as though Van Camp was purchasing as any other packer. It made rebate payments at the end of each month to Van Camp, although Van Camp was at the same time largely indebted to it for merchandise sold. Was this secrecy and this widespread misstatement as to uniformity of price consistent with its now asserted justification that prices to its customers were based on volume of business?

That defendant's price discrimination was due to its desire to retain Van Camp's business may be conceded. Such an object was perfectly justifiable, but under the statute it could not be attained through price discriminations save as the volume of the latter's business justified it, or unless the discounts were granted to meet competition. Setting to one side the last-named justification for the discrimination, as we must, in view of the jury's rejection of it, defendant's course, if approved, must find support solely in the volume of Van Camp's business. But if the volume of Van Camp's business was the basis of reduced prices, should not such prices have been available to all customers who bought cans of like amount? Were not all canners entitled to know the amount of purchases necessary to obtain the saving in cost of cans? Without such information Van Camp's competitors were not in the same position to plan for future business, and it was this concealment of fact, coupled with defendant's assurance that no price reductions were made because of the size or volume of business, that cast discredit on defendant's after-the-act protestation that the discriminations were made because of volume of business.

Defendant's efforts to secure or obtain business were limited by the statute. It could not rebate or discriminate in price save as a purchaser gave an order, the size of which justified the price reduction. Ordinarily a manufacturer, in fixing prices based on volume of business, would publish a price list from which all customers would learn the amount of purchases necessary to secure the best prices. Defendant published a price list, but it was a false one. Defendant showed favoritism to Van Camp, and the jury, upon the evidence before it, was justified in finding that such favoritism was not dependent on the volume of the latter's business.

Concealment and misrepresentation alone and in themselves did not constitute plaintiff's cause of action. They did, however, discredit defendant's justification to such an extent that such issue became one of fact for the jury. At the close of all the testimony a situation was presented where defendant's statement, made before litigation was commenced, to the effect that it sold its cans to all at the same price, f. o. b., Indianapolis, disputed its later statement made after suit was begun that the prices to Van Camp were different from the prices to other purchasers because of Van Camp's larger purchases.

In disposing of this phase of the question, it might be added that the burden was on the defendant to establish its justification in view of plaintiff's showing that a price discrimination was given to Van Camp. Jones Commentaries on Evidence, Vol. 2, p. 1026. Schlemmer v. Buffalo, Rochester & Pittsburgh Ry. Co., 205 U. S. 1, 27 S. Ct. 407, 51 L. Ed. 681; Thomas E. Basham Co. v. Lucas (D. C.) 21 F.(2d) 550. Balt. & O. S. W. R. Co. v. U. S. (C. C. A.) 242 F. 420. Javierre v. Central Altagracia, 217 U. S. 502, 30 S. Ct. 598, 54 L. Ed. 859.

There was evidence tending to establish the fact that all prices f. o. b. factory could be, and should be, the same to all purchasers. We will not review it at length. It is sufficient to say that we agree with the District Court in its conclusion that a jury question was presented as to this issue. Porto Rican American Tobacco Co. v. American Tobacco Co. (C. C. A.) 30 F.(2d) 234; National Biscuit Co. v. Federal Trade Commission (C. C. A.) 299 F. 733; Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993.

■ *Lessening Competition.* Little need be said on this question. The figures all too clearly show that the discrimination, not only might have substantially lessened competi-

tion, but did help Van Camp drive out its competitors. Van Camp's business increased rapidly. For the five years preceding the making of this contract, its business remained almost at a standstill. Five years after the contract was made, its business had increased 300 per cent. This increase was much more rapid than that of the canned goods business of the country during the same years. True, this increase might have been due to superior ability, greater ingenuity, and more aggressive methods on the part of Van Camp. But the figures are also present from which the jury might have concluded that the increased business following the contract of 1921 was due to the advantages which Van Camp obtained in the way of prices from defendant. Viewing the testimony most favorably to plaintiff, we are satisfied that this issue was also for the jury. They might have found from the evidence before them that the effect of such price discrimination would be to substantially lessen competition and tended to create a monopoly of this business by Van Camp. Porto Rican American Tobacco Co. of Porto Rico v. American Tobacco Co. (C. C. A.) 30 F.(2d) 234.

■ *Damages.* Defendant argued that plaintiff failed to produce testimony which would justify the submission of any question of damages to the jury. Its argument in this respect may be considered under its two contentions: (a) The evidence fails to show that plaintiff suffered any damages. (b) If any damages are shown, they are so speculative, remote, uncertain, and unascertainable as to afford no basis for determination by a court or jury.

We cannot accept either contention. The evidence in the case showed that, prior to the contract of 1921 and the alleged price war which Van Camp undertook immediately following the execution of its favorable contract with defendants, plaintiff lost money in the branch of its business which was in competition with Van Camp. It also appears that, for a period of five years prior to such price war, the plaintiff was conducting its business at a profit. Substantial retailers testified that they had previously purchased their canned goods from plaintiff, but after the 1921 contract they purchased them from Van Camp because it underbid plaintiff. On any theory submitted, the evidence most favorable to plaintiff showed damages in excess of the jury's award.

Defendant argued that the proper rule of damages was not the difference in the price of cans charged plaintiff and that charged

Van Camp. Pennsylvania Railroad Company v. International Coal Mining Company, 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. The court here submitted no such rule of damages. Nor did defendant's counsel contend for it. Nevertheless, the actual damages which the plaintiff suffered might possibly have been a sum that equaled such difference.

The instant case well illustrates the difficulty of fairly fixing damages or in stating a rule for the intelligent guidance of the jury in deliberating on this question. Plaintiff's business for five or six years was conducted at a loss, after it had been for years previously conducted profitably. Its officers attribute such loss to price cutting by Van Camp made possible by defendant's discriminations in the sale of cans to Van Camp. The business involved large turnovers on a small percentage of profit. When plaintiff showed a loss of customers due to Van Camp's underselling it, and supplemented this proof with evidence that Van Camp's underselling was made possible by the discrimination made by defendant in the sale of its tin cans, it was (proof as to other issues appearing) entitled to recover at least nominal damages.

But this was not all the proof. The usual profit under normal operations on a case of canned goods is shown by the testimony of numerous witnesses. The profit which various canners were able to make prior to the price cutting of Van Camp also appears. The effect of the Van Camp price cutting on plaintiff's business is clearly inferable. The jury's award is lower than any theory of plaintiff's witnesses.

The case is one for the application of the rule which denies defendant's right to take refuge behind the alleged uncertainty or indefiniteness of the plaintiff's proof of damages which were occasioned by defendant's own wrongdoing and its concealment of such fact from the injured party. As stated in Eastman Kodak Company v. Southern Photo Materials Company, 273 U. S. 359, 47 S. Ct. 400, 405, 71 L. Ed. 684:

"A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."

A wrongdoer who injures another's business and conceals such wrongdoing from the injured party is not in an enviable position to demand greater particularity and specific-ity of details showing loss of business and lost profits. And the rule announced in Pierce v. Tennessee Coal, Iron & Railroad Company, 173 U. S. 1, 19 S. Ct. 335, 340, 43 L. Ed. 591, is likewise applicable. There it was said:

"Nor is it any objection to the recovery, that in this case the damages are difficult to ascertain, depending upon contingent and uncertain events. There are many cases in which the damages are uncertain and difficult to ascertain, and, in fact, cannot be ascertained with certainty, but this has never been regarded as a sufficient reason for denying all relief."

It is true, plaintiff's proof of damages depends largely upon what is commonly called circumstantial evidence. To a certain extent this is supplemented by inferences deducible from such evidence. But such proof is sufficient to support a recovery of substantial damages. Hetzel v. Baltimore & Ohio Railroad Company, 169 U. S. 26, 18 S. Ct. 255, 42 L. Ed. 648; Eastman Kodak Company v. Southern Photo Materials Company, 273 U. S. 359, 47 S. Ct. 400, 71 L. Ed. 684; Straus et al. v. Victor Talking Machine Co. et al. (C. C. A.) 297 F. 791; Linen Thread Co. v. Shaw et al (C. C. A.) 9 F.(2d) 17; Frey & Son, Inc., v. Welch Grape Juice Co. (C. C. A.) 240 F. 114.

We are satisfied that the evidence required the issue of the amount of plaintiff's damages to be submitted to the jury, and, no error being assigned challenging the correctness of the charge of the court on this phase of the case, the amount fixed in the verdict must stand.

*Admission of evidence.* The evidence received over defendant's objection may be described as: (a) Proof of losses by packers other than plaintiff; (b) proof of misrepresentations made to plaintiff and other packers by defendant to induce the sale of cans; (c) proof that defendant kept its price reduction to Van Camp a secret.

To determine whether such evidence was properly admitted, it is necessary to recall the issues being tried. The controverted issues arose out of defendant's contention that the discriminations were in good faith made by it to meet competition; that such price discriminations did not in fact lessen competition or tend to establish a monopoly; that plaintiff was not damaged by such price discrimination to Van Camp; that the price discriminations were due to Van Camp's larger purchases.

The evidence of secrecy surrounding the defendant's contract with Van Camp surely tended to impeach defendant's assertion that it in good faith made the price reduction to avoid competition, and also to refute its contention that the reduction in price was based upon Van Camp's volume of purchase. For the same reason and purpose plaintiff could offer evidence to show that defendant represented to it *and other canners* that all sales were made at the same price to all people. Such evidence tended to show that there was no necessity for, and there was in fact no practice, of giving price reductions to defendant's larger customers. Porto Rican American Tobacco Co. v. American Tobacco Co. (C. C. A.) 30 F.(2d) 234; Jones v. United States, 258 U. S. 40, 42 S. Ct. 218, 66 L. Ed. 453; Jones, Commentaries on Evidence, § 613, p. 1140.

As to the proof of losses by packers other than plaintiff, the court's ruling must. be sustained because of the difficulty experienced in proving damage or lost profits. If the losses, which plaintiff suffered after the 1921 contract was entered into, were due to its own mismanagement or its own carelessness or lack of judgment, it could not recover for such. Nor would those losses in any way measure the amount of damages which it might recover of defendant. On the other hand, if the proof tended to show that other packers similarly situated and similarly engaged met like experiences and suffered similar losses in volume of business and in profits, then it could be argued that plaintiff's losses were not attributable to weak or incompetent management. In short, such testimony tended to corroborate the figures submitted by plaintiff in proof of its damages.

*Interstate Commerce.* Defendant argued that, in order to constitute a violation of section 2 that (a) the discriminator must be engaged in interstate commerce, (b) that the discrimination shall be in interstate commerce, (c) that the effect of such discrimination shall be to substantially lessen competition or tend to create a monopoly in interstate commerce. It denied that plaintiff has established requirement (b). In short, it asserted that its sales of goods to Van Camp which were in competition with plaintiff were intrastate sales, and, relying upon the clause in the first sentence of the said section 2 "in the course of such commerce," it argued that such transactions were outside the condemnation of the statute.

Defendant's sales to Van Camp made pursuant to the contract of 1921 necessitated the delivery of some cans outside of the state and some within the state. Less than 1 per cent. of the total sales were deliverable outside the state. It contended this small percentage of business could not have substantially lessened competition in any line of commerce or tended to create a monopoly.

It is worthy of note that the contract itself makes no distinction between intrastate and interstate sales. It covers one transaction—a sale of cans—part of which the purchaser was to use in its factories within the state and part to be used in factories outside the state of Indiana. Plaintiff was selling to Van Camp the latter's requirements for a period of years. Van Camp intended to use the cans to receive foods which it sold in competition with plaintiff in interstate commerce.

Moreover, we are not prepared to accept a construction of the statute which would permit of its defeat by so simple a scheme as here outlined.

In Van Camp & Sons v. American Can Company, 278 U. S. 245, 254, 49 S. Ct. 112, 114, 73 L. Ed. 311, 60 A. L. R. 1060, the court said:

"The fundamental policy of the legislation is that, in respect of persons engaged in the same line of interstate commerce, competition is desirable and that whatever substantially lessens it or tends to create a monopoly in such line of commerce is an evil. Offense against this policy, by a discrimination in prices exacted by the seller from different purchasers of similar goods, is no less clear when it produces the evil in respect of the line of commerce in which they are engaged than when it produces the evil in respect of the line of commerce in which the seller is engaged. In either case, a restraint is put upon 'the freedom of competition in the channels of interstate trade which it has been the purpose of all the anti-trust acts to maintain.' Federal Trade Comm'n v. Beech-Nut Co., 257 U. S. 441, 454, 42 S. Ct. 150, 155, 66 L. Ed. 307, 19 A. L. R. 882."

Bearing in mind that the restraint through discriminations which is condemned by the aforementioned section 2 is upon "the freedom of competition in the channels of interstate trade which it has been the purpose of all the anti-trust acts to maintain," it is apparent that "in the *course* of such commerce" cannot be narrowly restricted to sales made by the discriminator, but includes the commerce of the purchaser receiving the price discrimination. To illustrate, if A sells to B at prices less than it charges to all of the

competitors of B and without the justification recognized by the statute, the commercial transaction which comes under judicial review in a case of this kind is the extent of the discrimination in favor of B and its effect in substantially lessening competition among those engaged in the line of commerce in which B and its competitors are engaged. Van Camp & Sons v. American Can Company, supra.

What was said in Stafford v. Wallace, 258 U. S. 495, 518, 519, 42 S. Ct. 397, 403, 66 L. Ed. 735, 23 A. L. R. 229, is particularly applicable here. We quote but briefly from an excerpt in that opinion taken from Swift v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518:

" 'Commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business. When cattle are sent for sale from a place in one state, with the expectation that they will end their transit, after purchase, in another, and when in effect they do so, with only the interruption necessary to find a purchaser at the stockyards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the states, and the purchase of the cattle is a part and incident of such commerce. What we say is true at least of such a purchase by residents in another state from that of the seller and of the cattle. * * * '

"The application of the commerce clause of the Constitution in the Swift Case was the result of the natural development of interstate commerce under modern conditions. It was the inevitable recognition of the great central fact that such streams of commerce from one part of the country to another, which are ever flowing, are in their very essence the commerce among the states and with foreign nations, which historically it was one of the chief purposes of the Constitution to bring under national protection and control. This court declined to defeat this purpose in respect of such a stream and take it out of complete national regulation by a nice and technical inquiry into the non-interstate character of some of its necessary incidents and facilities, when considered alone and without reference to their association with the movement of which they were an essential but subordinate part."

The correctness of this construction is emphasized, we think, by the use of the word "course" appearing in the limitation clause. What did Congress mean to include when it spoke of a discriminator engaged in com-

merce, dealing in the *course* of its commerce? Can we separate from one of defendant's contracts an essential part thereof, but which perchance is with a local buyer who, though he uses the article as an interstate commodity, accepted it from the seller in the state wherein the contract was executed? We think not. See, also, Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U. S. 52, 47 S. Ct. 255, 71 L. Ed. 534; Loewe v. Lawlor, 208 U. S. 274, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815.

The tin cans were useless save as they might be used as containers for foodstuffs. Both parties knew they were to be so used. They were sold with the understanding that the purchaser would use them to distribute goods in interstate commerce. The following quotation from Stafford v. Wallace, supra, is therefore pertinent:

"The principles of the Swift Case have become a fixed rule of this court in the construction and application of the commerce clause. Its latest expression on the subject is found in Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458. In that case it was held, on the authority of the Swift Case, that the delivery and sale of wheat by farmers to local grain elevators in North Dakota, to be shipped to Minneapolis, when practically all the wheat purchased by such elevators was so shipped, and the price was fixed by that in the Minneapolis market, less profit and freight, constituted a course of business, and determined the interstate character of the transaction."

Plaintiff's appeal, No. 4336. On this appeal complaint is made of the inadequacy of the attorneys' fees allowed. Appellant contends the amount fixed should have been very much larger.

What is a reasonable fee for plaintiff's attorneys in this case is not a question capable of exact determination.

The question presented involves a consideration of the District Court's finding rather than the making of such a finding by this Court. The District Court was in a better position than we to judge of the reasonable value of such services rendered up to the date of the entry of the judgment. The facts and figures submitted were such that a rather wide latitude must be given to the discretion and judgment of the District Judge. From a reading of the memorandum filed by him, we are satisfied that he gave consideration to all of the various factors which enter into the determination of this issue, to wit, time and labor devoted to the

772

case, the novelty and difficulty of the questions presented, the usual charges of lawyers for similar services in the locality where the litigation was conducted, the amount involved in the controversy, the uncertainty of the compensation, etc. See American Bar Association's Canons of Ethics. Under all of the circumstances we are not disposed to disturb the sum fixed by the District Court.

The District Court, however, could not and doubtless did not take into consideration the uncertain factor of a possible appeal, nor the legal services which might be rendered in case an appeal was prosecuted. Since the judgment was entered in the District Court, defendant has taken this appeal, and plaintiff's attorneys have rendered additional necessary and substantial legal services. Plaintiff should be allowed their reasonable value, which we fix at $3,500.

The statute authorizing plaintiff's recovery of reasonable attorneys' fees directs their inclusion as a part of the costs. We find nothing in this statute which limits this allowance to services rendered in the District Court. Its terms are broad enough to include plaintiff's reasonable attorneys' fees necessarily incurred in any court wherein the cause was pending. A similar construction has been placed on a similar statute. Davis v. Parrington (C. C. A.) 281 F. 10, 17; Louisville & N. R. Co. v. Dickerson (C. C. A.) 191 F. 705, 712.

The decree is affirmed. The Ladoga Canning Company shall recover its costs on both appeals, including therein, as a part of the costs of this court, $3,500, as and for its reasonable attorneys' fees.