Clark *v.* Essex Wire Corporation, Appellant.

Argued November 9, 1948. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine, Stokes & Hamilton,* for appellant.

*Joseph S. Clark, Jr.,* with him *Max E. Cohen, Simon Pearl* and *Barnes, Dechert, Price, Smith & Clark,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1949:

This was an action for an accounting. For a period beginning in 1934 plaintiff was a salesman representative of the Essex Wire Corporation in the eastern district, including New York, Pennsylvania and other states. On October 1, 1941, the parties agreed that, effective November 1, 1941, plaintiff's compensation would be changed from a commission basis to a fixed salary. Plaintiff alleges that though he agreed to the change, the defendant was obligated to pay him the commissions due on orders placed with the company by him prior to the date of the change, but not filled until subsequent to the change. Defendant refused to pay plaintiff any such commissions or to render an accounting therefor.

Defendant's evidence was that in October, 1941 it summoned the plaintiff to the home office in Detroit for the purpose of severing his connection with the Company, but that defendant then offered to permit plaintiff to remain in their employ under the condition that he agree to work for a fixed salary, without commmissions. John G. Searls, who was then Vice-President and Gen-

eral Sales Manager of the defendant company, testified that plaintiff had surrendered his claim to the commissions as part of an arrangement under which he would receive a salary of $7500.00 per year, and defendant would pay his son a salary of $3600.00 per year. Defendant also assumed the expenses of the plaintiff and his son. Searls wrote the plaintiff a letter confirming the new basis of compensation, but this letter was silent as to the relinquishment by the plaintiff of his right to commissions earned on orders obtained before the effective date of his new basis of compensation.

Plaintiff remained in the employ of the defendant corporation until his discharge on July 31, 1944. During this period of time the only man with whom plaintiff ever discussed the question of commissions alleged to be due was Searls. He declared that Searls during that period had assured him that the commissions which the plaintiff alleged to be due for orders previous to the date referred to would be forthcoming although they were never paid.

When plaintiff's counsel opened his case before the jury, he said: "Mr. Clark had been doing pretty well for this Company, and also he had been making some money for himself. Of course, that's what most of us try to do in the United States these days. The amount of those commissions which he earned by getting the orders for which he had not been paid, was a rather substantial sum. We contend that it was as much as $30,000." Defendant's counsel then objected and moved for the withdrawal of a juror. This was denied. Then counsel stated to the jury: "As I was about to say a minute ago, the exact amount of those commissions we are not in a position to tell you because all of the books and records are in the hands of my friend and his client, and therefore, this suit is in part to ask for what is called an accounting. In other words, you won't be asked to pass on the amount which Mr. Clark has coming to him, if any, on these commissions. You will just

have to say that you think, if you agree with us, that he is entitled to something, and that amount will be determined by a court order directing these Companies to bring their books in and tell us how much . . ." .

At the trial plaintiff presented over objection testimony as to the commissions for the years 1938 to 1941 inclusive. The trial judge said to the jury: "What the plaintiff wants you to do is uphold his version of what the contract was and then say by your verdict that the defendant should account to him for commissions on the orders that are in dispute. . . . The plaintiff is asking only for an accounting, . . . This is perhaps one of a few cases you will run into where the plaintiff is not asking for a certain amount of money. . . . Your verdict will be simply in favor of the plaintiff or in favor of the defendant." The jury returned a verdict "for the plaintiff". The defendant asked for a new trial, first, because the court "erred in failing to withdraw a juror at the request of the defendant when the attorney for plaintiff mentioned the probable amount of the commissions alleged to be due, in his opening address to the Jury;" second, the court "erred in admitting into evidence the commissions paid the plaintiff in the years 1938, 1939, 1940 and 1941"; third, the court erred in charging the jury as follows: "he (plaintiff) introduced evidence of the amount of commissions that he did get through the years of '38, '39, '40, '41, showing a growth during those years of from $15,000 to $34,000 in commissions, which would have to be reduced, of course, by the amount of the expenses, of which the only evidence in the case is the statement by Mr. Searls that the expenses were from $7500 to $10,000 a year."

In denying the motion, President Judge Box, after quoting what plaintiff's counsel had said in his opening speech, said as to reason No. 1: "This would be fatal in a negligence case in which money damages are asked, and defendant cites only such cases to bolster his complaint. Carothers v. Pittsburgh Ry Co., 229 Pa. 558

(1911) is a sample of this familiar rule. The reason given is that such statements may cause the jury to take counsel's estimate of the damages in place of the evidence itself. In the instant case, however, the amount of damages was in no way at issue. This was immediately explained by counsel to the jury after defendant's motion to withdraw a juror had been overruled, and it was again explained by the trial judge in his charge. The sole issue was whether or not defendant should account (Golder v. Rabinowitz, 125 Pa. Super. Ct. 573 (1937)), and whether an accounting would give plaintiff 30¢ or $30,000 or nothing at all was of no moment to the jury. To believe that a jury would be swayed by a remark that everyone in sight told them was irrelevant is to take a negligible view of their minds." We agree with the court below. It is a well-known maxim that the "law is not concerned with trifles" and we think that the remarks objected to may, under the circumstances of this case, be classed as one of those trifles which do not affect in any way the verdict of the jury. The issue as the court said was whether or not plaintiff was entitled to an accounting. Whether his claim for $30.00 or $30,000 or $30,000,000 would not affect the tribunal's judgment as to whether or not he was entitled to an accounting at all.*

The general rule is conceded that, in an action where damages are sought, "Any statement to the jury by court or counsel, that calls their attention to claims and amounts not supported by the evidence is error:" *Bullock v. Chester & Darby T. R. Co.*, 270 Pa. 295, 113 A. 379. The rationale behind these cases is that in naming an amount claimed, counsel is making a suggestion to the jury which in their minds takes the place of evidence. This, however, is a case in which a single question was to be answered by the jury—was plaintiff entitled to an

* On the accounting which followed, it was shown that the amount of the commissions due plaintiff was $9,375.53.

accounting from the defendant for moneys allegedly due him? Here there is no need to invoke the rule generally applied in actions for damages as no amount of damages was sought and the jury was not asked to fix the amount of any monetary award.

This Court has said that the propriety of counsel's arguments and remarks to the jury is to be determined by the trial court under all the existing facts and circumstances at trial and that an application for the withdrawal of a juror is addressed to the sound discretion of the trial court, and the refusal of a motion to that effect, because of objectionable remarks to the jury by counsel, is reviewable for abuse of discretion only: *Nalevanko v. Marie et al.*, 328 Pa. 586, 195 A. 49; *Dannals v. Sylvania Twp.*, 255 Pa. 156, 99 A. 475; *Kelly v. Scranton Ry. Co.*, 270 Pa. 77, 112 A. 748.

In 53 Am. Jur. 359, Sec. 457, it is said: "The courts recognize that proof frequently fails to come up to expectation; the tendency is therefore to permit counsel a reasonable latitude in stating to the jury the facts proposed to be shown. Hence, in the absence of substantial error, the action of counsel in good faith in referring in his opening statement to matters subsequently not proved cannot be questioned." See also 64 C. J. 237, Sec. 251.

The second question involved is was the defendant prejudiced by the introduction in evidence of the amount of the moneys earned by plaintiff on a commission basis for the years 1938 to 1941 inclusive, and the reference thereto in the charge of the court?

The plaintiff was endeavoring to establish his contention that he never agreed to a change in the arrangements as to his salary *which would involve the loss of substantial commissions already earned.* In weighing this contention it was proper for the jury to know whether or not he had earned substantial commissions. When he showed that he had earned annually in commissions from $24,000 to $27,500, after deducting ex-

penses, he believed that the jury would find that he would not give up such a valuable contract for another which provided a salary only at the rate of $7500 a year for himself and $3600 for his son, both subject to termination on one month's notice, *and also waive all claims to substantial commissions already earned.* By showing the lucrativeness of his commissions he increased the probability that his contention was correct.

When John G. Searls, who had been Vice-President and General Sales Manager of the defendant company up to the year 1941, testified on behalf of the defendant, he admitted that the new arrangement as to salary resulted in a substantial reduction in plaintiff's compensation, but he qualified it by stating that "I wouldn't say it was entirely a substantial reduction because the expenses were included in the new arrangement.". He then testified as to the amount of these expenses and was asked whether he knew the amount of commissions earned by the plaintiff during the preceding years. To refresh his recollection he was shown memoranda given annually by defendant to plaintiff, showing annual earnings. When objection was made, the trial judge stated: "I am inclined to think, Mr. Comber, that the comparison between commissions during the commission years and salary plus expenses in the salaried years, might bear upon the inherent credibility of one story as against another. . . . For that reason I will overrule the objection."

In plaintiff's statement of claim he declared that prior to November 1, 1941, he procured for the defendant numerous orders for merchandise and products manufactured and marketed by the defendant and that on or about November 1, 1941, there became due by the defendant to the plaintiff the sum of approximately $30,000, at the rate of commission aforesaid, on products sold by plaintiff or for which orders were received by plaintiff or defendant from customers procured by the plaintiff, such orders having been received and accepted by defendant prior to November 1, 1941. Defendant in its answer

admits that on November 1, 1941, the defendant had on file orders procured by the plaintiff which were unfulfilled and which were filled subsequent thereto; but it is *denied* that there was anything due the plaintiff in the way of commissions *on such orders* . . . and that in consideration of the defendant continuing the plaintiff in its employ under the terms of the agreement set forth in Paragraph 10, the plaintiff *expressly waived* all claim of any kind or character to commissions upon any shipments made subsequent to November 1, 1941 on orders *placed prior thereto by the plaintiff*. (Italics supplied.)

Certainly when it is contended by one litigant that the other party waived all claims of a certain character and the other party denied such waiver it was important for the jury to know just *what was the value* of the things allegedly waived. It is not in accord with human nature for a man voluntarily to give up something of substantial value for something markedly less valuable. The evidence whose admissibility the defendant challenges is clearly relevant to the issue: did defendant waive what plaintiff claimed he waived, to wit, commissions on sales made by the plaintiff before November 1, 1941, but filled after that date?

Thayer, in his "Preliminary Treatise on Evidence at the Common Law", says (page 530) : "The rules of evidence . . . simplified . . . should take on the general character of principles, to guide the sound judgment of the judge, rather than minute rules to bind it. The two leading principles should be brought into conspicuous relief, (1) that nothing is to be received which is not logically probative of some matter requiring to be proved; and (2) that everything which is thus probative should come in, unless a clear ground of policy or law excludes it." Thayer also quotes from Best on Evidence, inter alia, as follows (page 488) : "The evidence must have an open, visible, clear connection with the fact to be proved."

31 C. J. S., Sec. 158, p. 864, states as a basic rule of evidence that "evidence of whatever facts are logically relevant to the issue is legally admissible." In *Ryman's Case,* 139 Pa. Superior Ct. 212, 220, President Judge KELLER, speaking for the Superior Court, said: "It is a fact often lost sight of . . . that evidence relevant to an issue in the case and having probative value is usually admissible, and in order to be excluded, must be shown to come within a rule which makes it inadmissible. Professor Wigmore states it thus: 'All facts having rational probative value are admissible, unless some specific rule forbids. . . .' "

The judgment is affirmed.