553 A.2d 973

Deborah Sue SHOCKLEY, Appellant,

v.

HARLEYSVILLE MUTUAL INS. CO.

v.

TORNETTA PONTIAC, Intervenor.

Deborah Sue SHOCKLEY

v.

HARLEYSVILLE MUTUAL INS. CO.

v.

TORNETTA PONTIAC, Intervenor, Appellant.

Superior Court of Pennsylvania.

Argued March 3, 1988.

Filed Dec. 23, 1988.

Reargument Denied Feb. 28, 1989.

Charles A.J. Halpin, III, Philadelphia, for appellant (at 1418) and appellee (at 1670).

Peter J. Mooney, Philadelphia, for appellant (at 1670) and appellee (at 1418).

Manfred Farber, Philadelphia, for appellee.

Before BROSKY, BECK and CERCONE, JJ.

BROSKY, Judge:

This is a consolidated appeal from an order denying appellant, Deborah Sue Shockley's, and cross-appellant, Tornetta Pontiac's, requested post-trial relief. Appellant Shockley sought recovery under an auto insurance policy issued by appellee, Harleysville Mutual Insurance Company, when the vehicle she had purchased from appellee/cross-appellant Tornetta Pontiac was destroyed in a fire.

At issue is, (1) whether appellant held an insurable interest in the vehicle where it had been stolen from its original owner but was purchased in good faith from Tornetta; (2) whether appellant's recovery from Tornetta for breach of warranty of title affects her ability to recover from appellee on the insurance policy. Tornetta argues, on cross-appeal, that it is entitled to subrogate itself to insurance proceeds received by appellant by virtue of paying appellant for her loss pursuant to the breach of warranty of title suit. We reverse the order appealed from to the extent it denies appellant Shockley's requested relief.

The facts relevant to our discussion are: appellant purchased a vehicle from Tornetta Pontiac and purchased insurance coverage for the vehicle from appellee Harleysville. Sometime later the vehicle was completely destroyed in a fire. Upon investigation of the accident police discovered that the vehicle had been stolen from the original purchaser and eventually sold to Tornetta through a dealer exchange. A false title and vehicle identification plate had facilitated the seemingly legitimate sale of the vehicle.

Appellant sued Tornetta, claiming damages in theories of tort and breach of warranty of title, and subsequently obtained a default judgment. In settlement of the judgment, appellant received cash and satisfaction of her outstanding liability on the purchase. The settlement to appellant completely covered her loss. Appellant subsequently sued appellee Harleysville after appellee refused to pay her for the fire damage. Appellant sought payment under the

insurance contract and Tornetta intervened seeking subrogation of any insurance proceeds. The trial court denied both appellant and Tornetta, although it awarded appellant the sum she had paid for the insurance coverage.

■ Appellant's ability to recover under the insurance contract is first predicated upon there being a valid contract of insurance. This in turn, among other things, depends upon appellant having an "insurable interest" in the vehicle. We must agree with the trial court that appellant possessed such an interest. In *Luchansky v. Farmers Fire Insurance Company*, 357 Pa.Super. 136, 515 A.2d 598 (1986), a panel of this court recited the generally accepted rule that anyone who will derive pecuniary benefit or gain from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction has an insurable interest. It is also sufficient if the individual has a reasonable expectation of benefit from preservation of the property. Having perfect legal title is not necessary. Clearly under this authority appellant had an insurable interest in the vehicle.

To all parties involved, and up until the vehicle was discovered to be a stolen vehicle, the transactions of purchasing the vehicle and insurance coverage on it were indistinguishable from any other purchase transactions. Appellant paid valuable consideration for the vehicle and stood to suffer the normal consequences should it be destroyed. The loss of its use and the dilemma of replacing it or its services. The fact that it had been stolen from its original owner affected appellant's right of possession and enjoyment only with regard to the true owner as her title as a bona fide purchaser for value was superior to all but the true owner's. Had the stolen nature of the vehicle remained undiscovered, appellant presumably would have continued using the vehicle and making payments on it. Furthermore, upon its destruction, we must assume, the appellee would have paid its value to appellant pursuant to the terms of the insurance contract. Consequently, we conclude that a bona fide purchaser of a stolen vehicle has an

insurable interest in that vehicle. Having concluded that appellant had an insurable interest in the stolen vehicle and thus had a valid contract of insurance we must determine whether there were grounds to relieve the insurer of its obligation under the contract.

The essence of an insurance contract is that the insurer, for the appropriate premium payment, will compensate the insured for a covered loss upon its occurrence. If there is an existing and valid contract of insurance the insurer's obligation is triggered by the occurrence of a loss of the type covered under the policy. There is no doubt that the loss in question here, a fire loss, is of the type contemplated in, and thus covered under the policy. Consequently, appellee had an obligation to pay for the fire loss upon its occurrence under the terms of the insurance contract, unless, however, one of the terms of the contract excuses them from payment. Appellee points to the subrogation provision of the insurance contract to excuse its obligation to pay. However, proper application of the principle of subrogation will not excuse that obligation.

The principles of subrogation will allow an insurer who has indemnified an insured for a loss to recover payments made to the insured by the party responsible for that loss to the same extent or amount that the insurer has paid the insured. A logical extension of this principle will relieve the insurer of its obligation to indemnify a loss, in cases where the insured has recovered from the responsible party prior to the insurer's payment, to the extent and amount that monies have already been paid to the insured for that loss. In both cases the insured must recover for the same loss for which the insurer is being asked to pay or has already paid the insured. *Allstate Insurance Company v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021 (1987).

In this case, appellee is being called upon to pay for a fire loss and has a right to avoid payment to the extent that appellant has received any payments for that fire loss. Appellee, as an insurer, is not entitled to cite payments to the appellant, as the insured, for losses other

than the fire loss to avoid payment of its obligation under the contract, nor would appellee be entitled to subrogate itself and assert a claim to payments by others to the appellant *for a loss other than that for which the appellee has paid the appellant. Clarke,* supra. In other words, although the insurer may "stand in the shoes of the insured" upon paying a claim, it does so only to the extent and with regard to the loss it covered. The insurer does not magically acquire every conceivable right of the insured by virtue of meeting its contractual obligation. As appellee is being asked to pay for a fire loss the subrogation right relates to monies received by appellant for a fire loss. Clearly, the monies received by appellant from Tornetta do not relate to Tornetta's liability for the fire damage, but instead, for a breach of warranty of title.

Consequently, there are no grounds for appellee to be subrogated to the proceeds of appellant's breach of warranty of title action against Tornetta. However, upon appellee's payment to appellant for the fire damage, appellee will acquire subrogation rights as to that payment and if the individual(s) responsible for the fire damage is ascertained, the right to recover against him would belong to appellee. In contrast, and quite ironically, if appellee's logic is utilized and the individual responsible for the fire damage is found, he or she would be immune from liability to appellant or appellee for the fire damage because appellant has already been compensated from Tornetta.

We have further reason to find appellee's subrogation argument unconvincing. Additional to the fact that appellant's recovery was for a different loss than that being claimed under the insurance contract is the fact that the recovery was for a loss that appellee apparently did not even extend coverage for. For appellee to make a convincing argument on subrogation principles it follows that not only should appellee have either paid appellant for the same loss she has independently recovered for, or that appellee is being requested by appellant to pay for such a loss, but also that appellee should have provided coverage for the type of

loss appellant has been successful in recovering for as well. We hardly believe that appellee would have provided any kind of coverage had appellant suffered a loss related to a lack of good title. For instance, had the stolen nature of appellant's vehicle been discovered and the vehicle repossessed by its owner, appellant would have suffered a title related loss. Had appellee paid for this loss then it would have had an equitable right or subrogation right to monies received from appellant's breach of warranty of title action against Tornetta. We are rather skeptical that appellee would have paid such a claim by appellant. We further suspect that appellee would have vehemently argued that coverage did not apply for such a loss under the policy. An affirmance would not only allow a subrogation right of sorts against monies received by appellant for a loss different than that which appellee is being asked to cover, it would also allow subrogation against monies received by appellant for a loss the type of which appellee had not even extended any insurance coverage to appellant for. This contravenes the entire concept of subrogation.

██ Undoubtedly, the particular facts of this case are making an appropriate disposition and analysis difficult as they are quite unusual. For instance, one must question whether Tornetta, at the time of appellant's suit, was legally obligated to appellant to the extent appellant recovered in settlement. Tornetta essentially paid the full value of the automobile to appellant. Inasmuch as the greatest extent of appellant's loss was related to the fire, with which Tornetta had no connection, as opposed to a breach of warranty of title, it is questionable whether Tornetta was legally liable to appellant, at that time, for the full value of the vehicle. Tornetta would not have been liable to appellant had the car been passed with good title and then destroyed by fire due to no fault of Tornetta's. Consequently, when the stolen vehicle is purchased and then destroyed by fire, Tornetta would not seem to be liable for that loss either as it was, in reality, a loss caused by a fire not a loss caused by a deficiency of title. In contrast, if

appellant were forced to pay the value of the vehicle to the true owner, the fire then being simply an event which leads to the discovery that the vehicle was stolen, appellant would have suffered a title related loss for which Tornetta would be liable. The point of this discussion is that it is not at all clear whether Tornetta was legally liable to pay the sum it in fact paid to appellant, at least under circumstances present at that time. The fact that appellant, through good fortune or some sort of legal bargaining prowess, gained a settlement to which possibly she was not legally entitled will not obviate appellee's contractual obligation to appellant.

Another interesting question and potential problem in a case like this, although to this point not an issue here, relates to the priority of claims to the insurance proceeds. That is, assuming appellant is successful in recovering against appellee, does the true owner of the vehicle have a claim to the insurance proceeds, and if so is this claim superior to that of appellant's; or alternatively, can appellant be held liable to that extent to the true owner of the stolen automobile?

■ Appellant, as a bona fide purchaser of the stolen vehicle, held a title or right of possession in the vehicle superior to all but the true owner. It seems clear that, had it been discovered that the vehicle was stolen prior to its destruction, the rightful owner would have had a right to replevin or otherwise repossess the vehicle. See, *Petition of Hennessy*, 343 Pa.Super. 293, 494 A.2d 853 (1985); *Justice v. Fabey*, 541 F.Supp. 1019 (E.D.Pa.1982). It is less clear whether, where as here, the vehicle is destroyed, the rightful owner has a right to insurance proceeds directly traceable to, and in replacement of, the vehicle, or whether the rightful owner could recover a sum representing the vehicle's fair market value from the bona fide purchaser.[1]

1. Although there appears to be no cases in Pennsylvania answering this question, the case of *Duncan v. State Farm Fire and Casualty Co.*, Tenn., 587 S.W.2d 375 (1979), suggests liability may attach to the bona fide purchaser. When considering the question of insurability of a stolen vehicle, the Tennessee Supreme Court stated:

Of course, if such is the case, then appellant would experience a "double recovery" only if the rightful owner, Aetna Casualty, in this case, by virtue of paying the original owner upon its theft, chose not to pursue this course of action. Even this, like Tornetta's possible overpayment to appellant, would be a matter of good fortune for appellant rather than something which would relieve appellee of its obligation to pay under the insurance contract.[2]

> Clearly, such a purchaser stands to benefit from the continued existence of such a vehicle because of the continued availability of its use to him unless and until the true owner reclaims it; and, he runs the risk of pecuniary loss by its destruction not only because of the loss of its use, but also because, as a constructive bailee of the property, he may incur liability to the true owner for the value of the vehicle, in the event the true owner makes a claim for its return and he is unable to make delivery because it is destroyed.

2. The two preceding sections of the opinion, we would hope, illustrate the fact that, contrary to appellee's assertions otherwise, there have indeed been two distinctly different losses. One loss could be traced to the theft of the vehicle, the other to its destruction by fire. Both occurrences can be shown to have resulted in an economic loss, although the bearer of the loss could conceivably change or vary depending on how the various parties proceed.

When a vehicle is stolen the owner suffers an economic loss due to the loss of use. Unless the vehicle is recovered in substantially the same condition as it was when stolen, and before being resold for value, there will remain a loss even if the loss is shifted to another by virtue of an insurance contract or other forms of compensation or indemnification. The same can be said to occur when the vehicle is destroyed. In such circumstances, there is a loss of use without possibility of recovery. When a vehicle is stolen then later destroyed, two economic losses occur (assuming value was given by the subsequent purchaser). This is because two individuals have paid value for the use of the vehicle and both are subsequently deprived of the use. The original owner suffers a loss of use as does the later purchaser. Again, the losses may shift depending upon subsequent events, but there will remain two losses, or, perhaps alternatively stated, a double loss.

In the present case, a definite economic loss was experienced when the vehicle was stolen. Although the original owner was compensated by his insurer the loss did not disappear, it was merely shifted to the insurer. (Nor would the loss have disappeared had the vehicle been recovered in good condition from appellant, it would have merely been shifted to her.) The loss traceable to the fire was, apparently, born by Tornetta and shifted to NADE, the dealer's exchange from which Tornetta purchased the vehicle, and possibly shifted again to an insurer of NADE's. Regardless of how we realign the responsibility of bearing the losses, the fact will remain that two losses occurred. The

■ It must be remembered that appellee is in the business of insuring against loss. It accepted a premium from appellant in exchange for a promise to indemnity her upon the occurrence of certain losses. The premium it charged was ostensibly set in accordance with prior claim history and corresponded with the risk appellee was assuming. The stolen nature of the vehicle *did not change* the risks involved or insured against, and should not affect appellant's rights with respect to appellee.

■ We conclude appellee was erroneously relieved of its contractual obligation to indemnify. We have also reviewed Tornetta's claim for subrogation of the insurance proceeds but find no merit in it.

Accordingly, we reverse the order appealed from to the extent it denies appellant's requested relief. We also reverse the award to appellant of a sum representing her premium payment to Harleysville. The order is affirmed with regard to denying Tornetta's claim for subrogation.

CERCONE, J., files a concurring and dissenting opinion.

CERCONE, Judge, concurring and dissenting:

I am in complete agreement with the majority that a bona fide purchaser for value of a stolen automobile has an

best case scenario would align the losses with the parties who could be said to have, perhaps more than the others, assumed that risk of loss.

In the present case there was what could be called a loss related to a theft and/or a defective title and a loss caused by a fire. Anytime an individual purchases an item he could be thought of as assuming a risk of bad title. An individual can reduce that risk, ostensibly, by receiving a warranty of title and further by purchasing from an individual or entity which will likely be able to honor the warranty. This title-theft related loss, therefore, in a best case scenario, should be borne by NADE or their privies since somewhere in that custodial chain the vehicle was acquired with, and passed on with, defective title and because the stolen vehicle was later discovered, albeit in an unusable state, a circumstance which normally would enable the vehicle owner to recover. The fire loss was assumed, in a sense, by appellant but, of course, was shifted to appellee by virtue of purchasing insurance coverage.

insurable interest in the vehicle. I also agree with the majority that the purpose of an insurance contract requires an insurer who has accepted a premium and agreed to cover a particular risk to compensate an insured for a covered loss upon its occurrence. However, I must respectfully disagree with the determination by the majority that where such an insured sustains a single loss, she is entitled to a double recovery.

Reduced to fundamentals, property insurance is an agreement to indemnify against economic loss in a case where property is damaged or destroyed. *Commonwealth ex rel. Schnader v. Fidelity Land Value Assur. Co.*, 312 Pa. 425, 167 A. 300 (1933); *First Nat. Bank of Jessup v. Cappellini*, 149 Pa.Super. 14, 26 A.2d 119 (1942). A policy of fire insurance is a contract of indemnity which does not pertain to the property as such, but rather covers the interest of the insured in the property. *In re Gorman's Estate*, 321 Pa. 292, 295, 184 A. 86, 87 (1936). *See Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 70 A.2d 828 (1950), *overruled on other grounds by Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983). The object of the property insurance contract is not to provide a gain for the insured, but only to compensate him for an economic loss. *Insurance Co. of North America v. Alberstadt*, 383 Pa. 556, 119 A.2d 83 (1956). Thus, where there is no economic loss by virtue of recoupment against a third party, there is no right to an additional recovery against the insurance company. The fact that an insurance carrier may be in an apparently strong financial position and able to absorb a loss, does not justify creating liabilities. *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983).

In the instant case, the extent of the economic detriment suffered by appellant was contested. Therefore, the learned lower court was correct in admitting into evidence the monies received by appellant from Tornetta Pontiac in full recovery of her losses. The search for the truth of an issue requires that if evidence is logically probative, it should be received unless there is some distinct ground for

refusing to hear it. *See Clark v. Essex Wire Corp.*, 361 Pa. 60, 63 A.2d 35 (1949). A trial court's paramount concern is to allow a jury to hear all evidence relevant to the issue being decided, excluding only that evidence which is unduly prejudicial. Payments from the tortfeasor to the injured party may, as a general rule, be shown in mitigation or reduction of any recovery. *Christy v. Darr*, 78 Pa.Commw. 354, 467 A.2d 1362 (1983). Appellant's loss was directly at issue in the instant case, and any evidence presented relevant to that issue was admissible.

It is well settled that the ultimate measure of compensatory recovery is not affected by the form of action in which a plaintiff seeks his remedy. *Hetzel v. Baltimore & Ohio Railroad Co.*, 169 U.S. 26, 18 S.Ct. 255, 42 L.Ed. 648 (1898). Although a plaintiff may select a form of action when more than one is appropriate to the facts, he cannot, by so doing, change the measure of his recovery from that fixed by the settled law as flowing from the same facts. Although plaintiff may sue in two separate causes of action, he may only obtain one recovery for a single loss and this is so even though the recovery sought is against two different persons. *See Rossi v. State Farm Auto. Ins. Co.*, 318 Pa.Super. 386, 465 A.2d 8 (1983). Evidence which bears on any material issue is relevant even though it also bears on a non-material issue. In the case of *Orlando v. Herco, Inc.*, 351 Pa.Super. 144, 505 A.2d 308 (1986), evidence relating to the manner of preparation of allegedly unmerchantable food was challenged as irrelevant to an action for breach of warranty of merchantability. The plaintiff argued that the evidence related only to negligence, which was not an issue in the case and, therefore, should have been excluded. This court rejected plaintiff's argument because the evidence pertained to a material issue, that being whether the food was fit for human consumption.

In the case *sub judice*, appellant argues that evidence of her recovery against Tornetta Pontiac is irrelevant because that recovery was based on tort and not on contract. Such reasoning is not valid because the important issue in the

case was the precise extent of appellant's economic loss through the destruction of her car. The judge, sitting as a jury, properly heard evidence on this matter and properly held appellant was not entitled to double recovery for a single loss.

For the above reasons, I would affirm the lower court.