616 A.2d 648

**Leslie Ann JOHNSON, Appellant,**

v.

**George L. BEANE**

v.

**STATE AUTO MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed Sept. 24, 1992.

Reargument Denied Dec. 4, 1992.

Johnson, J., filed concurring opinion.

McEwen, J., dissented and filed opinion.

194

Richard C. Angino, Harrisburg, for appellant.

F. Lee Shipman, Harrisburg, for appellees.

Before McEWEN, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

In this appeal from a judgment entered by the Court of Common Pleas of Cumberland County on April 24, 1991, following dismissal of appellant's garnishment proceeding, the issue presented is one of first impression. For the reasons that follow, we affirm.

On August 25, 1985, appellant was involved in an automobile accident and incurred injuries some of which are of a permanent nature. Appellee Beane, the other motorist involved in the accident, admitted liability. However, his insurance company, appellee State Auto Mutual Insurance Company, (State Auto), was unable to reach agreement with the appellant and declined to settle for the policy limit of $25,000. The case went to trial on the issue of damages, and, on May 12, 1987, the jury returned a verdict for appellant in the amount of $200,000. Appellant requested $175,000 from Erie Insurance Group, (Erie), her underinsured motorist carrier. Appellant later offered to accept $100,000, but no agreement was reached. She then filed a Petition to Compel Underinsured Motorist Arbitration.

In the interim, on July 13, 1987, the trial court ruled on appellee Beane's post-trial motions and ordered a remittitur reducing the verdict to $75,000 or, alternatively, if the remittitur was not accepted, granting appellee's motion for a new trial. No appeal was taken and appellant filed a praecipe to enter judgment on July 30, 1987. State Auto paid the $25,000 policy limit leaving $50,000 remaining due on the judgment. Appellant and Erie agreed to settle for the remaining $50,000 of the judgment, and appellant executed a Release and Agreement which states in pertinent part:

... In consideration of such payment, I agree as follows: 1) to subrogate Erie Insurance Exchange/Erie Insurance Company to my right of recovery against any person or party legally liable to me for the amount of and for the purpose of the payment noted above; 2) that I have not and will not make any separate settlement with nor give any separate release to any person or parties who caused or alleged to have caused me the above mentioned loss or accident; 3) to authorize my attorneys, Angino & Rovner, P.C., to proceed with a bad faith/excess action against State Auto;[1] and 4) to cooperate in prosecuting said action.

1. It is not clear on whose behalf a bad faith/excess action is authorized. Taken in context with the fourth clause, it appears that Erie is the intended party. This would be the most logical reading of the docu-

It is my understanding that Erie has agreed to advance any out-of-pocket expenses reasonably necessary to prosecute the bad faith/excess action against State Auto and if said action is successful Erie has agreed to pay its pro rata share of attorneys fees and expenses as per the contingent fee agreement entered into by Angino & Rovner, P.C. and myself a copy of which is attached. . . .

Brief for Appellant, Exhibit D.

After making payment of the $50,000, Erie informed appellant that it did not intend "to pursue the matter any further" and closed the underinsured motorist portion of the file. Appellant acknowledged that Erie waived its subrogation rights. On June 8, 1988, appellant initiated a garnishment proceeding against State Auto claiming that the insurer had acted in bad faith in failing to settle the claim and filed a Writ of Execution for $50,000 plus interest based upon the existing judgment against Beane naming State Auto as garnishee. Appellee State Auto filed a motion for summary judgment which was denied by order of August 25, 1989. A jury trial was conducted and resulted in a hung jury and a mistrial. State Auto filed a second motion for summary judgment which was again denied.

On February 25, 1991, appellee State Auto filed a petition for a rule to show cause why: 1) the judgment entered against George L. Beane, should not be marked satisfied and 2) the garnishment proceeding should not be dismissed with prejudice. After a response was filed, the trial court issued an opinion and order dismissing the garnishment proceeding. The current appeal followed the entry of judgment.

The issue as presented by appellant is:

If an "insured" in a motor vehicle negligence accident under the Financial Responsibility Law 75 Pa.C.S.A. § 1701, *et seq.* obtains a verdict and judgment exceeding the tortfeasor's *liability* coverage, settles with her *own underinsured* carrier and signs a *subrogation* agreement that only releas-

ment. It does not, however, alter the clear intention of the first clause which subrogates appellant's right to recover for the amount paid to her by Erie.

es her *own underinsured* carrier, does the agreement constitute an *assignment* of all her rights to the underinsured carrier so as to preclude the injured party from executing on the judgment against the tortfeasor and/or obtaining interest and/or garnishing "bad faith" damages?

Appellant's brief, p. 3 (emphasis provided).

Appellant first argues that the trial court erred in concluding that the subrogation agreement constituted an assignment of her rights to pursue a bad-faith garnishment action. Appellant asserts that the trial court's error is in equating "subrogation" with "assignment". We do not agree. It is our view that the trial court was correct in its analysis. The trial court stated:

> ... This is a garnishment action seeking to collect the amount of the verdict in the underlying cause of action. By the same token, it is an attempt by the plaintiff to garnish amounts from State Auto Mutual Insurance Company which have already been paid by her own underinsured motorist carrier, under circumstances where that carrier, subrogated to her right of recovery, objects....

> We have no difficulty accepting the proposition that where a defendant, by virture [sic] of the bad faith dealing of his own insurance company, is exposed to an excess verdict, he may bring an action against his own insurance company for bad faith. Similarly, we understand the principle that, in such cases, in lieu of an assignment by the defendant to the plaintiff of the right to bring such a bad faith claim, the plaintiff may bring the action directly against the defendant's insurer as a garnishee.... In this case, however, the plaintiff's right to bring an action for the difference between the defendant's insurance coverage and the verdict was subrogated to her own underinsured motorist carrier. This subrogation occurred in the context of making her whole; i.e., she was paid the entire amount of the original judgment. Black's Law Dictionary defines garnishment as a satisfaction "of an indebtedness out of property or credits of debtor in possession of, or owing by, a third person." In this case, the plaintiff initially had judg-

ment against the defendant for those amounts in excess of his insurance coverage. In the meantime, however, certain critical events transpired. Specifically, the amounts owed to the plaintiff from the defendant have been paid. In making the payment, the underinsured motorist carrier made settlement with the plaintiff in accordance with a release whereby the plaintiff subrogated her rights to the insurance carrier making the payment. . . .

We are satisfied that the plaintiff has effectively assigned her right to recover in garnishment to Erie in exchange for payment of the entire sum due her. The plaintiff has not filed a separate bad faith action but rather has chosen to proceed to garnish the original amount of the excess verdict under circumstances in which those amounts have already been paid to her. . . .

Trial court opinion, April 17, 1991, pp. 3–4.

We cannot agree with appellant that the trial court has confused subrogation with assignment. The trial court clearly stated that appellant *subrogated* her right to bring a garnishment action for the amount paid to her by Erie which satisfied the original judgment.[2]

Appellant states that the right which she subrogated to Erie was very limited and was not an assignment of all of her rights to pursue a bad faith claim against State Auto. We question, however, what it is that appellant is pursuing in this action. In her brief she states; "On June 10, 1988, Ms. Johnson filed a *Writ of Execution* for $50,000, plus interest, based upon the *existing* judgment against Mr. Beane naming State Auto as Garnishee and then served it with Interrogatories." Brief of appellant, p. 8 (emphasis provided). Later in her brief she states, "Ms. Johnson originally had a verdict of $200,000 that was remitted to $75,000. Even with respect to

2. We do not read the trial court's statement that appellant "effectively assigned her right to recover in garnishment to Erie in exchange for payment of the entire sum due her" to mean that she has assigned all of her rights to pursue an action. The trial court dismissed this action based on appellant's subrogation of her right to garnish the amount of the excess verdict for which she had been paid. We make our decision on the same basis.

the $75,000 remitted verdict, she had to pay attorney's fees and expenses with respect to the original tort action. Her net from the $75,000 was $42,250. Since that time, more than $10,000 of expenses has been spent in pursuing the garnishment proceeding. On the other hand, there currently exists the original $50,000 judgment against Mr. Beane which, with interest, now exceeds $63,028.37. Even if Erie had decided not to waive its right of subrogation, that right would exist only as to the $50,000 that it paid, [sic] Ms. Johnson would have been entitled to the interest and both Ms. Johnson and Erie would have had to share attorney's fees and expenses." Appellant's brief, p. 18. It appears that appellant is attempting to garnish the excess amount of the judgment paid to her by her underinsured carrier plus interest and attorney's fees with respect to the original action as well as with respect to the garnishment action.

█ It is clear that there can be no cause of action for interest or fees with respect to the garnishment action. Such a recovery would be premature since there has been no disposition in that action, and her entitlement is therefore very much in question.

█ We must then consider whether appellant may maintain the current garnishment action in which the measure of damages is the difference between Beane's policy limits and the judgment.[3] Two questions are raised; first, whether appellant may pursue a garnishment action for damages which exceed the amount of the fully satisfied judgment, and, second, whether by subrogating her right to pursue a bad-faith claim to Erie, she is precluded from pursuing the same.

█ A writ of execution is used to attach a debt which is owed by the garnishee to the garnishor. See Pa.R.C.P. 3101(b)(1). It would follow that if there is no debt owing to the garnishor, which in this case is the appellant, then no

3. In a third party garnishment action, the injured plaintiff is not suing in her own right but is an assignee of the insured and as such stands in the shoes of the insured. "It is the insured who has allegedly suffered the wrong at the hands of the insurer." *Gray v. Nationwide Mutual Insurance Company*, 422 Pa. 500, 223 A.2d 8, 13 (1966).

action would exist. We must therefore consider whether there is a debt owing from Beane or his insurer; State Auto, and to whom the debt is owed.

■ As stated in the appellant's brief, the garnishment action was initiated by the filing of a writ of execution based upon the existing judgment against Beane which represents the difference between his policy limits and the remitted verdict. The appellant has been fully compensated for this amount albeit through her own underinsured motorist carrier. No interest can have accrued where she received the full amount of the verdict and no part of the judgment remains unsatisfied. Finally, it has long been the rule in Pennsylvania that each party to litigation is responsible for his or her own legal fees absent a statutory provision which states to the contrary. *See Estate of Wanamaker,* 314 Pa.Super. 177, 460 A.2d 824 (1983); *Chatham Communications, Inc. v. General Press Corp.,* 463 Pa. 292, 344 A.2d 837 (1975).

■ Garnishment is defined in part as: "... an incident to or an auxiliary of judgment rendered in principal action, and is resorted to as a means of obtaining satisfaction of judgment by reaching credits or property of judgment debtor." *Black's Law Dictionary,* 612 (5th ed. 1979). Unless there is a portion of the judgment which remains unsatisfied as to appellant, or there is some debt owed to her, it would be inequitable and illogical to permit her to pursue a garnishment action.

■ Appellant was paid the full amount of the remitted verdict in exchange for subrogating her right of recovery against Beane in a bad faith excess action. Therefore, the debt of Beane was satisfied as to appellant and Erie then acquired the right to pursue the excess action which appellant would have been entitled to bring before the debt to her was satisfied. *See Demmery v. National Union Fire Insurance Company,* 210 Pa.Super. 193, 197, 232 A.2d 21, 24 (1967) citing 6 C.J.S. Assignment § 2b (12) (explaining difference between subrogation and assignment). The principal is:

when an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party,

equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.

*Allstate Ins. Co. v. Clarke*, 364 Pa.Super. 196, 201, 527 A.2d 1021, 1024 (1987). Erie is the indemnifying party to which the debt is owed and the very purpose of subrogation of the claim is to permit Erie to recoup that which it has lost. We find that it is impermissible for appellant to subrogate her right to bring a bad faith excess action to her underinsured motorist carrier and at the same time attempt to garnish the debt for which she has been fully compensated.[4] Appellant accepted the remitted verdict without appeal and settled with her underinsurer. She has received the entire value of her judgment, and we find no error with the trial court's decision to dismiss appellant's garnishment proceeding.[5]

Affirmed.

JOHNSON, J., files a concurring opinion.

McEWEN, J., files a dissenting opinion.

4. Appellant also argues that it was improper for the trial judge to consider the payment which she received from her underinsured motorist carrier because it was a collateral source. We disagree. A judgment in appellant's favor had already been rendered and her receipt of payment from her underinsurer in no way diminished the amount to which she was entitled. It must be considered that she has received the full value of her judgment in determining the appropriateness of a garnishment action.

5. Appellant raised the argument that the "law of the case" doctrine should have prevented the trial court from granting appellee's motion to dismiss after previously denying several motions for summary judgment. We find this argument to be without merit. The "law of the case" doctrine provides:

> where an *appellate court* has considered and decided a question on appeal, that court will not, in a subsequent appeal of another phase of the same case, reverse its previous ruling, even though convinced it was erroneous.... The doctrine is inapplicable here because the rule applies only to *appellate courts*....

*Farber v. Engle*, 106 Pa.Cmwlth. 173, 177, n. 5, 525 A.2d 864, n. 5, 866 (1987). This doctrine cannot be used as appellant would have us apply it.

JOHNSON, Judge, concurring:

I concur with my learned colleague's Opinion which affirms the Judgment entered April 24, 1991. I agree that the right to pursue State Auto Mutual Insurance Company ("State Auto") has been subrogated to Erie Insurance Group ("Erie"). I also agree that it is impermissible for Johnson to attempt to garnish the debt for which she has been fully compensated. I write separately to express my opinion that, regardless of whether the "agreement" would have effectively subrogated any rights, Erie acquired the exclusive right to pursue State Auto by virtue of having paid the entire remainder of the $75,000.00 judgment.

The Majority Opinion considers the import of the "agreement" between Erie and Johnson, and appears to conclude that subrogation resulted therefrom. Majority Opinion, at 195–196 n. 1. Having carefully considered that document, I cannot ascertain whether Johnson agreed to authorize Erie to proceed with a bad faith claim against State Auto on behalf of herself, on Erie's own behalf, or on behalf of both Johnson and Erie. I am reluctant to hold, as a matter of law, that this document demonstrates the parties' intention to deprive Johnson of a right to proceed with this action.

I would rely on that portion of the trial court's Opinion, quoted approvingly in the Majority Opinion, that finds subrogation of the claim on the basis that Erie paid the entire remainder of the judgment:

> [P]laintiff's right to bring an action for the difference between the defendant's insurance coverage and the verdict was subrogated to her own underinsured motorist carrier. *This subrogation occurred in the context of making her whole; i.e., she was paid the entire amount of the judgment.*

Trial Court Opinion, April 17, 1991, pp. 3; Majority Opinion at 197 (emphasis added).

I agree with the trial court that Johnson's bad faith claim was subrogated to Erie *because Erie paid the remainder of the judgment,* regardless of whether the agreement between the parties would also have conferred the right. I write

separately because it is unclear to me whether the Majority finds that the right was subrogated by the "agreement" or by the payment of the claim.

I would also go beyond the majority's conclusion that it is impermissible that Johnson proceed on this claim. I would hold that whenever an insured has been fully compensated by his or her insurer for a particular loss, the insurer alone possesses the right to proceed on that claim, and the insured no longer has any right of action against such a wrongdoer.

Accordingly, I Concur in the Result.

McEWEN, Judge, dissenting:

The author of the lead opinion has, in his usual manner, provided an insightful analysis of the arguments presented in this appeal, and has, as well, expressed his view in a most persuasive fashion. Thus it is that I am most reluctant to differ. Nonetheless, I am compelled to this dissent because I find myself in disagreement with both the result achieved by the lead opinion and with its characterization of the issues raised as

"first, whether appellant may pursue a garnishment action for damages which exceed the amount of the *fully satisfied judgment* and second, whether by *subrogating her right to pursue a bad-faith claim* to Erie, she is precluded from pursuing the same."

The reflection I here relate commences with the fact that nowhere in the record of this case was I able to discern a "fully satisfied judgment". Rather, the $75,000 judgment entered on the docket on July 13, 1987, was reduced to $50,000 on the docket on April 26, 1988, as a result of the payment of $25,000 to appellant by State Auto. While appellant has received $50,000 in underinsured benefits from her insurer, Erie, a collateral source, the judgment debtor, State Auto's insured, cannot claim the benefit of the payment made to appellant by Erie as Erie is not a party to this action and is

not a tortfeasor.[1]   Simply put, neither Beane nor his insurer, State Auto, can claim to be third party beneficiaries of the policy appellant purchased from Erie.   To otherwise conclude would be to afford an arsonist, in an action against him by the victim homeowner, the defense of a fully satisfied judgment in a prior action between the homeowner and his or her insurer. Neither Beane, nor his insurer, nor the hypothetical arsonist can plausibly claim to be third party beneficiaries.   *See: Shockley v. Harleysville Mutual Ins.*, 381 Pa.Super. 287, 293, 553 A.2d 973, 976 (1988), *allo. denied,* 526 Pa. 638, 584 A.2d 320 (1990).

In such a situation, as here, the underinsurer who has paid the damages occasioned by the tortfeasor has a claim in subrogation against any monies subsequently recovered by its insured from the tortfeasor.   If State Auto were to tender $50,000 plus interest and costs to appellant, appellant would be required to mark the judgment against Beane satisfied and Erie, pursuant to the contractual provisions of both the policy of insurance and the release and agreement, would be subrogated up to the full amount of the payments it had made, minus "its *pro rata* share of attorney's fees and expenses...."

Nor can I agree with the suggestion of the lead opinion that appellant has "subrogated *her right to pursue* a bad faith claim to Erie".   The terms "subrogation" and "assignment" are *not,* in my view, interchangeable.   Rather the two terms refer to separate and distinct legal transactions.   One "subrogates" a claim and "assigns" a right.

Appellant agreed, in the release and agreement executed by Erie and appellant in connection with the settlement of her underinsured claim, to protect the subrogation rights of Erie, and Erie agreed to advance the necessary costs.   Nowhere in the agreement is there language to suggest that appellant has

---

1.   The applicable rule is that *"the satisfaction of a judgment recovered against the tortfeasor* bars a later suit against a second tortfeasor for the same injury. *See: Hilbert v. Roth,* 395 Pa. 270, 149 A.2d 648 (1959)." *Brandt v. Eagle,* 412 Pa.Super. 171, 183, 602 A.2d 1364, 1370 (1992) (Concurring Opinion by Wieand, J.) (emphasis supplied).   In the instant case, of course, the judgment against Beane has not been marked satisfied and Erie is not a tortfeasor.

assigned her cause of action to Erie. The agreement contains a simple promise to repay, in recognition of Erie's contractual and equitable subrogation rights, up to $50,000 in underinsured benefits paid to appellant by Erie, less Erie's *pro rata* share of attorney's fees and expenses, if appellant should obtain a verdict.

Erie, by virtue of the release and agreement as well as considerations of equity, was *"entitled to receive* under the equitable doctrine of subrogation *only* what is actually paid on appellant's behalf, less a reasonable attorney's fee and a proportionate share of costs." *Allstate Insurance Company v. Clarke*, 364 Pa.Super. 196, 205, 527 A.2d 1021, 1026 (1987) *quoting Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 227, 439 A.2d 1149, 1151–52 (1981) (emphasis in original). The release and agreement executed by appellant and Erie, in recognition of these well-settled principles, provided *inter alia:*

"that Erie has agreed to advance any out-of-pocket expenses reasonably necessary to prosecute the bad faith excess action against State Auto and if said action is successful Erie has agreed to pay its *pro rata* share of attorneys fees and expenses as per the contingent fee agreement entered into by Angino and Rovner P.C. and [appellant], a copy of which is attached."

Thus, by virtue of execution of the agreement, Erie bound itself to advance the costs and to pay a *pro rata* share of the attorney's fees and expenses incurred by appellant in the bad faith action. *See: Furia v. Philadelphia*, 180 Pa.Super. 50, 56, 118 A.2d 236, 239 (1955). *Cf. Allstate Insurance Co. v. Clarke*, *supra* 364 Pa.Super. at 206, 527 A.2d at 1026. *See also: Assoc. Hospital Service v. Pustilnik*, *supra* 497 Pa. at 229, 439 A.2d at 1153.

While not dispositive of the issue on appeal, it is clear that appellant, who was injured on August 25, 1985, and received a total of $42,250 from the $25,000 paid by State Auto on April 26, 1988, and the $50,000 paid by Erie in February of 1988, has *not* been "made whole"—she has not received the full amount of the remitted verdict because she has not received

the interest required by law to be paid on the outstanding judgment. However, regardless of the amount received by appellant from her underinsurer, I am compelled by my interpretation of decades of Pennsylvania jurisprudence on the collateral source doctrine to reject the notion that appellant, simply because she had the foresight to purchase $100,000 in underinsured motorist protection, is somehow barred from proceeding with this bad faith action.

The record reveals that the trial court repeatedly denied the motions filed by appellee wherein appellee alleged that it was entitled to judgment in its favor since "even if it was guilty of bad faith in failing to tender its policy limit, [appellant] is still not entitled to recover any judgment against it under a theory of unjust enrichment. [Appellee] cites *Rossi v. State Farm Auto Insurance Company*, 318 Pa.Super. 386, 465 A.2d 8 (1983), for the proposition that an injured party cannot recover twice for the same injury."

The trial court properly rejected this argument as meritless (1) when it denied appellee's first motion for summary judgment, (2) again, when it denied appellee's motion for a compulsory non-suit, and (3) again when it denied appellee's second motion for summary judgment. The court ultimately reversed its position on February 25, 1991, in response to a motion for a rule to show cause why the judgment should not be marked satisfied based solely upon the following reasoning:

State Auto has repeatedly objected to this proceeding; thus far to no avail. A trial was held on the garnishment cause of action which resulted in a hung jury. During the course of that trial, we took in camera testimony from representatives of Erie Insurance Exchange in which they stated their objection to this garnishment proceeding and expressed the legal view that, because the plaintiff has been paid the amount of the underlying verdict and has subrogated her rights to her own underinsured motorist carrier, which carrier has indicated that it does not intend to proceed with the collection of the debt owed it, the within garnishment action should be dismissed. We now agree.

\* \* \* \* \* \*

This is a garnishment action seeking to collect the amount of the verdict in the underlying cause of action. By the same token, it is an attempt by the plaintiff to garnish amounts from State Auto Mutual Insurance Company which have already been paid by her own underinsured motorist carrier, under circumstances where that carrier, subrogated to her right of recovery, objects.[1]

[1] To our knowledge, this case is one of first impression.

It must be emphasized that Erie did not intervene in this action and is without standing to "object". If Erie had "objected" to this bad faith action at the time it tendered the $50,000 in underinsured benefits to appellant, it could have required appellant to *assign all* of her rights against Beane and State Auto to it. Erie did not do so. Rather, it bound itself by the terms of the agreement to "advance any out-of-pocket expenses necessary to prosecute the bad faith excess action against State Auto." Erie may not now seek to preclude appellant from bringing this action to recover those sums which Erie itself had agreed were rightfully due her. Erie can, of course, assert its subrogation rights if appellant is successful in the bad faith excess action.[2]

Appellee's unjust enrichment argument was, in my view, properly rejected by the trial court in its order of August 25, 1989, when the eminent Judge Edgar B. Bayley denied appellee's first motion for summary judgment, and opined:

> We agree with plaintiff that her recovery of $50,000 from her underinsurance carrier was from a collateral source and is not relevant in these proceedings. *See, Boudwin v. Yellow Cab Co.*, 410 Pa. 31 [188 A.2d 259] (1963). Furthermore, plaintiff in this case is not seeking to recover damages against the garnishee for her personal injuries. She is seeking to recover damages for the alleged wrong that she was subjected to as a result of the garnishee's bad faith. The measure of those damages is the difference between State Auto's policy limit and the judgment against Beane.

**2.** Erie may have waived its subrogation rights—both contractual and equitable—thus entitling appellant to retain the entire amount of the verdict eventually recovered in this action for State Auto.

The affect that any verdict plaintiff may recover has on the $50,000 paid to her by Erie, is between plaintiff and Erie, not plaintiff and State Auto. State Auto is not insulated from a bad faith claim based upon plaintiff's insuring herself for the risk of being injured by an underinsured motorist.

The trial court changed it position and granted the motion filed by appellee after the first trial resulted in a hung jury presumably by reason of the testimony, taken *in camera* and not admitted into evidence, regarding Erie's decision not to pursue the bad faith action and, hence, its subrogation interest. Whether appellant will obtain a windfall as a result of subsequent conduct by her insurer is not relevant to resolution of the issue of standing to pursue this bad faith action.

It is for these reasons that I differ with such jurisprudential scholars as my colleagues who have otherwise written, and proceed to these certain conclusions of dissent. The payment to appellant by Erie of $50,000 in underinsured motorist benefits has not resulted in the judgment against Beane being fully satisfied. Nor can George Beane or State Auto demand that the judgment against Beane be marked satisfied, as they have *not* tendered the $50,000 plus interest outstanding on the judgment. Payment of $50,000 by Erie, a collateral source, would be irrelevant to an action to execute on the judgment, just as it is irrelevant in the instant case. Erie is the only entity which can raise the issue of a windfall to appellant, *via* an assertion of its subrogation rights, *if* they have not been waived by Erie.

[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense. However, as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor *relative* to the claim paid

by the subrogee, for equity will not allow the subrogee's claim to be placed ahead of the subrogor's.

*Allstate Ins. Co. v. Clarke, supra* 364 Pa.Super. at 201–02, 527 A.2d at 1024 (emphasis supplied).

Thus it is that I dissent.